The People of the State of New York, Respondent, *v.* Robert Turner, Appellant.

Fourth Department, January 12, 1967.

*E. George Perdix* for appellant.

*Michael F. Dillon, District Attorney (Leslie G. Foschio* of counsel), for respondent.

BASTOW, J.   On July 7, 1965 appellant was sentenced to a term of 3¾ to 7½ years, execution thereof was suspended and defendant was placed on "indefinite probation" (cf. Code Crim. Pro., § 933) subject to a hereinafter stated condition. Thereafter and in December, 1965 defendant was formally charged with a violation of probation.   On January 4, 1966 following a hearing, probation was revoked and execution of the sentence directed.   Defendant after his confinement in prison by timely handwritten notice appealed from the "judgment" convicting him of violation of probation.

We are met at the outset by a renewed motion by the People to dismiss the appeal upon the ground that the order revoking probation is not appealable.   We briefly state our reasons for the prior denial of a similar formal motion.   In 1951 this court in *People.* v. *Capria* (278 App. Div. 745) dismissed an appeal and in a brief memorandum stated that the notice of appeal had not been timely filed and served (Code Crim. Pro., § 521) and "that no appeal lies from an order revoking probation" citing only section 517 of the Code of Criminal Procedure. (See, also, *People* v. *Cocca,* 13 A D 2d 580.)   We now conclude that our prior decision insofar as it held that an order revoking probation is nonappealable should not be followed.

Part VI of the Code of Criminal Procedure is entitled "Special Proceedings of a Criminal Nature."   Title IX thereof relates to "Proceedings in Relation to Probation" (§§ 927–939).   Section 935 in part provides that when there is a violation of probation a warrant may be issued and "On [the

probationer] being arraigned and after an opportunity to be heard the court may revoke, continue or modify his probation.'' Such a revocation proceeding was considered in *People* v. *Oskroba* (305 N. Y. 113). It was there made clear that while the statutory provisions did not mandate any formal procedure the defendant was entitled to every reasonable opportunity to be heard within the common understanding of due process. The court concluded (p. 118) that '' Probation being a matter of grace, its revocation also depends on the sound exercise of judicial discretion.''

We conclude that when, as here, in a quasi-criminal proceeding probation is revoked and a defendant is sentenced to a long term in prison, he is entitled to appellate review to make certain that he was accorded those rights that constitute due process and that the trial court exercised a proper discretion in revoking probation. Our ultimate conclusion that such did not take place here fortifies this view. In *Matter of Luckenbach* (303 N. Y. 491, 496) it was written that '' ' Our law considers it an essential right of a suitor to have his cause examined in tribunals superior to those in which he considers himself aggrieved ' (*Yates* v. *People,* 6 Johns. 337, 364). So valuable a right should not be declared forfeited except in the clearest of cases.''

Turning to the merits of the appeal, it appears that appellant was a drug addict who in April, 1964 upon a plea of guilty of an attempt to violate subdivision 1 of section 1751 of the Penal Law (sale of narcotic drugs) had been sentenced to a term of 6 to 7½ years. This sentence was not suspended but after defendant's arrival in prison he was ordered in a habeas corpus proceeding to be resentenced. Thereafter the new and suspended sentence was imposed. The sole condition of probation, so far as the record discloses, was as follows: '' To immediately go to Buffalo State Hospital and be under care of Dr. Burnett.'' Defendant went to the hospital and there remained until (according to the hospital records) September 3, 1965 when he left.

On December 22, 1965 the Director of the Probation Department swore to an information charging that appellant had violated a condition of his probation by signing himself out of the hospital against the advice and without the consent of the hospital. The principal witness for the People on the hearing was one Schaefer, a member of the Probation Department, to whom appellant had been assigned for supervision. His direct testimony was brief and unsatisfactory. In substance he related that at some unspecified date he learned that

Turner had left the hospital and thereafter he conferred with his (Schaefer's) superior about securing a warrant for violation of probation.

An examination of the records of the Probation Department reveals a completely different state of facts. In passing we note that use of these records for purposes of cross-examination was denied appellant's trial counsel. In the exercise of a proper discretion upon the present record the application should have been granted. (Cf. *People* v. *Peace,* 18 N Y 2d 230, 237.) An entry in appellant's case history for the month of August contains the following: '' On August 30, 1965 (appellant) signed himself out from the (hospital) against the advice and consent of hospital authorities and on August 31, 1965 reported to probation supervision. (He) was reinstructed in the conditions of his probation and informed to immediately seek permanent employment and to continue to reside with his parents.'' There follow in the history two closely typed pages relating to the activities of appellant from September, 1965 until his arrest on the present charges about four months later in late December, 1965. During these months he continued to report to Schaefer and with some minor variations appeared to be living a normal life. Indeed, in November, 1965, there is this entry in the history: '' This youth continues to demonstrate a sincere, cooperative, and mature attitude regarding the conditions of his probation imposed and no reports of misconduct or the use of narcotics have been received.''

It thus becomes clear that the Probation Department during these months was in accord with the testimony of appellant on the hearing — that he had not violated the ambiguous condition of probation when he signed out of the hospital. We regretfully conclude from the entire record that there was another and distinct reason for charging appellant with a violation of probation; that this reason was not part of the charges and at the hearing defendant was prevented from exploring the facts relating thereto.

On December 22, 1965 a husband and wife swore to an affidavit alleging that appellant (a Negro) was associating with their daughter (a white girl) and that it was their belief that the daughter might be using narcotic drugs due to her association with Turner. It may be inferred that upon the affidavit coming to the attention of the Trial Judge he made inquiry of the hospital and by letter of December 22, 1965 from the Director thereof the Judge was informed of the facts pertaining to defendant's departure from the hospital.

Upon the hearing herein when it was suggested that the Judge might want to disqualify himself the latter stated "so that the record is clear when it goes to the Appellate Division" that he had "ordered the Probation Department to issue a warrant." Thus, in finality, although the probation officer conceded on cross-examination that perhaps both he and appellant had misunderstood the terms of probation, the Trial Judge either had a mental reservation that appellant should not leave the hospital without the consent of the named doctor or this unexpressed condition was formulated and implemented to end the association between appellant and a female not of his race.

Upon the hearing the girl in question was called as a witness by appellant. Although defense counsel had made clear his belief that the reason for the instigation of the violation of probation proceeding had been "the association of (appellant) and the white girl, as opposed to the alleged violation and signing out of the (hospital)" the prosecution by objections prevented the presentation of testimony by the girl and the small amount given concerning herself and her father was stricken.

It was the statutory duty of the court at the time it placed appellant on probation to determine the conditions thereof and notify the probation officer in writing thereof. (Code Crim. Pro., § 932.) It is fundamental that such conditions should be sufficiently clear and explicit so that both the defendant and the probation officer will have notice thereof (cf. *People ex rel. Benacquista* v. *Blanchard,* 267 App. Div. 663; *People ex rel. Perry* v. *Cassidy,* 23 A D 2d 706). Such was not done here. The condition that Turner should go to the hospital and be under the care of a named doctor was reasonably construed by both probation officer and defendant as not to be a further condition that the latter could only depart with the permission of the doctor. It follows that upon the facts presented the revocation of probation was not a sound exercise of judicial discretion.

The order revoking probation and directing execution of the sentence should be reversed and relator remanded to Erie County Court for further proceedings not inconsistent with this opinion. Any such further proceedings should be had before another Judge of Erie County Court.

WILLIAMS, P. J., GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Order revoking probation and directing execution of sentence unanimously reversed and relator remanded to Erie County Court for further proceedings not inconsistent with the opinion herein.