RONALD COLEMAN WILSON *v.* STATE OF MARYLAND

[No. 279, September Term, 1968.]

*Decided March 19, 1969.*

*Millard S. Rubenstein* (*Roland Walker* on the brief) for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barry S. Frame* and *Fred K. Grant, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 2 October 1967 in the Criminal Court of Baltimore the appellant was found to have violated the terms of probation prescribed on 5 September 1967 upon a conditional suspension of sentence on a verdict of guilty generally under a six count indictment charging offenses arising from the breaking of a storehouse.[1] See *Md. Code,* Art. 27, §§ 639, 641; Charter and Pub-

---

1. The crimes charged were storehouse breaking with intent to steal goods of the value of $100 and upwards—1st count; storehouse breaking with intent to steal goods of the value of less than $100—2nd count; storehouse breaking and stealing goods of the value of $5 and upwards—3rd count; rogue and vagabond—4th count; grand larceny—5th count; receiving stolen goods—6th count. The verdict of guilty generally convicted the appellant on each count. *Manning v. State,* 2 Md. App. 177. It is clear that the convictions of both larceny and receiving were here inconsistent, *Grimes v. State,* 4 Md. App. 607, as were the convictions of breaking with both the intent to steal goods of the value of $100 or more and goods of the value of less than $100. And it may be that upon the conviction under the first count, the crime charged in certain other counts merged therein. See *Tender v. State,* 2 Md.

lic Local Laws of Baltimore City (Flack 1949), § 277. The appellant presents and the State accepts that the only question to be considered on this appeal is whether the lower court abused its discretion in revoking the probation. See *Coleman v. State,* 231 Md. 220, 222; *Edwardsen v. State,* 220 Md. 82, 88-89; *Finnegan v. State,* 4 Md. App. 396, 401. We find that it did.

The appellant was charged "with violation of probation by not complying with the order" of probation of 5 September 1967.[2] The order was a printed form with blank spaces completed in handwriting. It was signed by the court. It stated that sentence of 10 years was suspended for a period of 5 years and that the appellant was released on probation for a like period in the custody of the Probation Department of the Supreme Bench "upon the following conditions." There followed seven printed conditions usually required.[3] The eighth condition, written by hand, read: "May go to Lexington, Ky. (U. S. Government Hospital)—School." It first was written that the appel-

---

App. 692. The general rule is that inconsistent verdicts of guilty under different counts of the same indictment, when both counts depend upon the same alleged facts, cannot stand, *Jones v. State,* 3 Md. App. 608, *Price v. State,* 3 Md. App. 155. And it is also the general rule that if a lesser offense is a necessary ingredient of a greater offense, a verdict of guilty on both is improper under the modern doctrine of merger, *Chittum v. State,* 1 Md. App. 205. But the application of the general rules may be waived by the failure to preserve or raise the question. *Fladung v. State,* 4 Md. App. 664; *Boone v. State,* 2 Md. App. 80. In any event, questions as to inconsistent counts and merged offenses are not before us on this appeal.

2. Although a general prison sentence was suspended upon the verdict of guilty on the substantive offenses, a fine of $1000 then imposed was not suspended. The fine was subsequently abated by two orders of the Criminal Court of Baltimore. The first, dated 6 December 1967, gave as the reason that "The Defendant has been sentenced seven years in prison for Violation of Probation." The second, dated 15 April 1968, gave as the reason that "The Defendant was returned to court on October 2, 1967, and the original sentence imposed." Both orders showed that no part of the fine or costs had been paid. See *Kelly v. State,* 151 Md. 87.

3. The 7th, including payment through the Probation Department of restitution to Tarlow Furs for damages, specified no amount to be paid, the space therefor being left blank.

lant was "to" go to the school but the word "to" was lined out and the word "may" was written in its place. At the penalty stage of the trial, in discussing the condition of probation relating to the federal institution, the court said:

> "Ordinarily, in probably ninety-five cases out of a hundred, you would be going to prison for a lengthy time but this is a very unusual program you speak of in Kentucky, a school-work program. There is no assurance that you will be accepted and if you are not accepted, I want to know it and, Mr. Walker, (defense counsel) undoubtedly you will keep us informed, but to deny him this chance, his life would be over for any and all purposes. He will succeed or will not. You have had these opportunities before and if you abuse this opportunity, I would never give it to you again.
>
> If you don't make good in Lexington, I would not give you a chance again but since this is all new, I am willing to try it.
>
> Your probation will be transferred down to Lexington, Kentucky and I can assure you if there is any violation of your probation, any kind of misconduct whatever, any association with any undesirable people or any undesirable places, any failure to do anything you are told, will result immediately in revocation of this suspension and serving your ten years. That is a long time and I want you to understand clearly that I will not permit the slightest deviation of probation. You might think you can get away with it and be able to get away with it, but there will be one time you will get caught and that will end it. It will cost you ten years."

The appellant said that he understood and had no questions.

It is clear from the record that the only condition of probation the appellant allegedly violated was the eighth. At the hearing, James McGuiness, the appellant's probation officer, testified for the State. He said that he had made no investigation with respect to the violation as he had just heard about it. The case had been assigned to him the first week in Septem-

ber and he had been working with defense counsel, who "co-operated a hundred per cent", since that time. He said that the appellant was to enter "the program at Lexington" and he did so on 12 September. He did not remain in it, returning to Baltimore on 22 September. He left because "he had completed the program from April until August * * * at Lexington * * * When he went back it was the understanding that he was to participate in the new Federal Program designed for those who had been narcotic addicts. They were to undergo this treatment and education program. However, it wasn't a hundred per cent. They had to apply for this program and he was not accepted and that is why he returned * * * I called Lexington on the phone Saturday, Mrs. Gould who at the time was in the social service section. His hospital records were three blocks away so that she couldn't get the record information with regard to it but she did have a telephone conversation with the person who was in charge of the record saying that Ronald had been tested when he went back and said that he was negative (as to narcotics)." She said he had been rejected for the program but did not say why. He had reported to the probation officer and the officer was unaware of any violation. "I thought it was understood the reason for his coming back was acceptable." He went with the appellant to get a job which had come to the officer's attention. Although the appellant did not get that job, he got a job on his own as a truck driver and had been working for a week. He had been discharged from Lexington in August as cured. The appellant had been going to Phipps Clinic at Johns Hopkins for psychiatric treatment. "I have a letter which is a matter of record dated September 25th."

The appellant testified that he had been in touch with Lexington after 5 September and they told him to report on 12 September. He did so and was admitted and tested for use of drugs. He went through a series of consultations with the doctors, including the one in charge of the educational program. They felt he needed more therapy and that he could receive it at the hospital for another four months or "as one doctor suggested, I could return home and receive it at Phipps Clinic. The only difficulty with that—they were just starting the program itself and can only take 14 applicants that they accepted there * * *

The program just started and hadn't been ready and there is no other way for admittance to the hospital except as a patient." He was discharged from the hospital "against medical advice. That is the only type discharge they give other than to stay for the full period. They don't have any kind of discharge they can give you like for the program because it is like if somebody comes in to be accepted, they can't be accepted. That's the only discharge possible, 'AMA'. They have no discharge." The earliest time to be discharged with medical authority is 90 days. It was a Doctor Anderson who told him to go back to Baltimore and continue with Phipps Clinic and he did so. Whether he could get into the program at Lexington would depend on his progress at Phipps and it would have made no difference with regard to entering the program whether he remained at Lexington until the program was available or returned for treatment at Phipps.

The court found that the appellant violated his probation. But the court said:

> "I am certainly not blaming the defendant for his failure to go into this program. He tried and was not successful, but this was the only basis on which I suspended the sentence. I just don't feel with an offense of this nature with the background here, that he should go back into the community without punishment."

A sentence of 7 years was imposed.

It is established that probation cannot be revoked without giving the probationer a hearing, and that this is a requirement of due process of law. *Swan v. State,* 200 Md. 420, 425; *Finnegan v. State,* 4 Md. App. 396. And in the instant case a hearing was required by statute. *Charter and Public Local Laws of Baltimore City* (Flack 1949) § 279. There is no question that the appellant had a hearing and that the requisites of due process were complied with in this respect. The question is whether the lower court was justified in finding that the appellant violated the eighth condition of probation. The determination of this question, while largely a question of fact, includes also the construction of the terms of suspension which were made known to the appellant, and by which he was guided in his conduct.

Such matters, while primarily within the discretion of the trial judge, are not wholly so, and are reviewable, if only for the purpose of determining whether that discretion has been abused in any way, or whether an erroneous construction has been placed by the trial judge on the conditions of probation. *Swan v. State, supra*, 425-426. Abuse of discretion may be found if the trial court acts arbitrarily or capriciously. *Edwardsen v. State*, 220 Md. 82, 89.

In the instant case, if the condition of suspension of the sentence was that the appellant be accepted in the educational program at Lexington so that the mere non-acceptance would violate the condition no matter what the reason, it is not apparent from the order the appellant was charged with violating, nor indeed, is it clear from the remarks of the court at the penalty stage of the trial. It may well be that this is what the court intended but if so it did not conform the probation order it signed to that intention. The condition the appellant was charged with violating was: "May go to Lexington, Ky. (U. S. Government Hospital) — School." The condition was permissive, not obligatory. It did not prescribe that he be accepted in the educational program. It did not specify when he was to go or how long he was to remain or what he was to do. It merely permitted him to go to a school at the U. S. Government Hospital at Lexington, Kentucky. The evidence before the court showed that he did go to the hospital at Lexington, Kentucky in an attempt to be admitted to the educational program. It did not show a violation of the eighth condition of the order. The probation officer assigned to the case did not consider the appellant's return to Baltimore a violation of the condition of probation and the court itself did not blame the appellant for the failure to go into the program, noting that he tried but was not successful. We find that the revocation of probation and the striking of suspension of sentence were not justified under the facts and under a proper construction of the condition of suspension as specified. Thus there was an abuse of discretion by the trial court and the judgment must be reversed.

Our holding sets aside the verdict of guilty of violation of probation, the striking of probation and the imposition of the 7 year sentence. It renders condition 8 of the Order of Proba-

tion of no further effect. It leaves the appellant with a verdict of guilty generally of the crimes charged by Indictment 1491, Docket 1967, January Term of the Criminal Court of Baltimore. The prison sentence on those convictions remains suspended for the five year period and the appellant remains on probation for a like period upon the remaining conditions in the Order of Probation.

> *Judgment reversed; costs to be paid by the mayor and city council of Baltimore.*