UNITED STATES of America,
Plaintiff-Appellee,

v.

Frederick Newell BOSWELL,
Defendant-Appellant.

No. 79–5215.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1979.

W. E. Gore, Jr., Jackson, Miss. (Court-appointed), for defendant-appellant.

Robert E. Hauberg, U.S. Atty., James B. Tucker, Asst. U.S. Atty., Jackson, Miss., for the U.S.

Before COLEMAN, RONEY and FAY, Circuit Judges.

COLEMAN, Circuit Judge.

The issue in this case is whether a revocation of probation was erroneous. An analysis of the issue necessitates a rather lengthy recitation of the antecedent facts.

Frederick Boswell was found guilty, in three counts, of mail fraud, wire fraud, and conspiracy to commit both offenses. The conviction was affirmed, *United States v. Boswell,* 5 Cir. 1978, 565 F.2d 1338, *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110.

On March 16, 1976, Boswell was sentenced. On Count I (mail fraud), he was assessed 18 months confinement. On Counts II and III (fraud by wire and conspiracy), imposition of sentence was suspended and Boswell was placed on probation for three years, to commence upon his release from the confinement imposed on Count I. This probation, however, was conditioned on his making, within 60 days, full restitution of all amounts *invested* by the victims of the fraudulent scheme.

Boswell's co-defendants had not been indicted on Count III. One of them was sentenced to five years imprisonment and the other to four years. Imposition of sentence on Count II was suspended, with probation for four years.

At sentencing, there was no representation that Boswell was financially unable to make restitution. His counsel did ask the following question:

"If Mr. Boswell, within the 10 days is unable to make this payment, Your Honor, I understand the effect would be that his sentence is increased, his sentence in jail is increased by the term of the probation?"

The trial judge responded:

"Well, that's not the purport of the order. The order was that he was put on probation and the sentence was suspended on counts two and three, and he was put on probation on special condition as to counts two and three that he pay this amount which I've just ordered."

To which Boswell's counsel responded:

"If he is unable, if he doesn't make the payment for whatever reason, including inability or whatever, he would then be as of that day, as I understand it, under a sentence which takes into consideration the prison sentence [imposed in Count I] and then adds this other to it, as I understand it."

To this remark the trial court responded:

"Well, that's not exactly right. I haven't sentenced him at all on counts two and three. And I suspended the imposition of count two and three on condition that he pay this money into the court."

The following colloquy ensued:

MR. GARLAND: "So he would be brought back and sentenced on those counts?"

THE COURT: "Right."

MR. GARLAND: "I understand. Thank you very much."

On the day of sentence, March 16, 1976, Boswell filed notice of appeal.

During the running of the 60 day period originally allowed Boswell in which to accomplish restitution, he requested a 30 day extension. On May 19, 1976, the request was granted.

On June 18, 1976, Boswell filed a motion to vacate and modify the restitution re-quirement. On July 1, after a hearing, the District Court modified its original judgment so as to require restitution in the sum of $71,140.99, the total loss sustained by the investors, without credit for any sums the victims might thereafter receive from a state court receivership then in progress. The money was to be paid to the probation officer, deposited in a savings and loan association at the highest current rate of interest, and held in trust until the outcome of Boswell's appeal.

On July 21, 1976, a panel of this Court stayed this restitution order until the outcome of the appeal. While the stay order did not say so, the panel was obviously concerned that Boswell was being ordered to make restitution in an amount greater than the loss sustained by the defrauded investors.

On January 12, 1978, 565 F.2d at 1343, we affirmed the conviction on Count I and remanded Counts II and III for resentencing in order that the condition imposed as to restitution could be stated in terms of ACTUAL LOSS to those defrauded.

On November 17, 1978, after an unsuccessful application to the Supreme Court for a writ of certiorari, Boswell was ordered to surrender to begin the service of his Count I sentence.

On November 20, 1978, Boswell's sentence on Counts II and III was amended so as to require as a special condition of probation that the defendant pay the sum of $53,517 (the actual loss) on or before January 19, 1979. At the hearing on this matter counsel for defendant informed the Court that the defendant could not pay this "amount". Boswell testified that his funds had been exhausted by a month-long trial for fraud in North Carolina, in which he had been acquitted. He also referred to the illness of his former wife and the necessity for supporting his four children, ages 7 to 17.

The record shows that before and during the trial which resulted in the sentence here at issue, Boswell had deposited $250,000 in trust with his Atlanta attorney. The record further shows that this money had been

transferred to a law firm in Savannah and that Boswell had been given $25,000 of this money, which apparently was spent in defense of the North Carolina prosecution. Boswell testified that the Atlanta attorney had refused to return any of the rest of the money and that he had retained Atlanta counsel on a contingent fee basis to institute suit for the recovery of the money.

On January 16, 1979, Boswell filed an affidavit of his inability to pay the required restitution.

On January 22, the government met this with a petition for revocation of probation.

The petition for revocation charged only that Boswell "has failed to pay the sum of $53,517 to the United States Probation Officer for the Southern District of Mississippi within 60 days from November 20, 1978". It did not allege that the failure to pay was due to negligence or willfulness. The defendant, however, filed no challenge to the facial sufficiency of the petition and appeared with counsel for a hearing which took place in Jackson on April 10, 1979.

There, the defendant admitted that he had not paid the money and asserted that this was true ."[B]ecause he does not have it, no way to raise it." Nothing was said about whether he had it, or equivalent resources, at time of sentence.

The government offered no proof beyond the mere failure to pay, which had been stipulated.

Boswell took the stand, under oath, "to make a statement about his circumstances." He testified that he had been at Maxwell Federal Prison Camp since November 18, 1978, serving his sentence on Count I; that he did not have $53,517, that he had no property or assets that could be used to raise the money. He had employed counsel in Atlanta to try to recover the funds he claimed he had deposited with his attorney in that city, but had been informed that it would be a year and a half before the suit could get to trial.

At the conclusion of Boswell's testimony, the trial court revoked probation and sentenced Boswell to an additional 48 months in prison, two years on each count, to run consecutively to the 18 month sentence then being served.

Boswell has appealed this action. The case was orally argued at Jackson on August 23, 1979, and we now have the case before us for disposition.

In its brief, the government emphasizes a pre-sentence report filed by the probation officer which said that Boswell then had a net worth of approximately three million dollars. This pre-sentence report was not mentioned at the hearing. The Judge could have taken judicial notice of a report on file in the case but gave no indication that he had done so. The government offered no evidence supporting the dependability of the report and, of course, the defendant offered no evidence to refute it. The defendant was cross-examined, but not about the report or its contents, and offered no specific proof as to the resources actually available to him on the date of sentence or what had since become of them. Neither did he offer any detailed evidence as to what actually became of any funds or property that he did have.

It therefore seems to us that in this extremely brief hearing on April 10, 1979, both sides came upon the firing range but neither side shot at the appropriate target.

In its order revoking probation, the District Court articulated no findings on the basic factual issues. It said only that the "defendant has not complied with the special conditions of his probation and hence there is good and sufficient grounds for the revocation of his probation."

### The Applicable Law

In *United States v. Savage,* 5 Cir. 1971, 440 F.2d 1237, it was held that a defendant "can not be held to be in violation of the condition [of his parole] unless he is clearly at fault". *Id.* at 1239.

It was there further stated that "the trial court can not revoke appellant's probation unless it is positively and clearly shown that failure to meet the condition was due to the appellant's neglect or default". *Id.* at 1239.

The revocation of Savage's parole was affirmed because "his probation will not be jeopardized by occurrences, events, or conditions over which he has no control". *Id.* at 1239.

*Hensley v. United States,* 5 Cir. 1958, 257 F.2d 681, was a case wherein the imposition of sentence had been suspended and the defendants placed on probation on the condition that they should pay the taxes due the United States. The revoking court, after hearing, found that there had been a gross concealment of assets and that there had been an intentional and fraudulent transfer of assets to avoid the payment of the taxes. Revocation of probation and the imposition of sentence were affirmed.

One of the clearest cases on situations such as we have here is *United States v. Taylor,* 4 Cir. 1963, 321 F.2d 339. *Taylor* was not a restitution case but the defendant had been granted probation on the condition that he pay fines within a specified time. Taylor maintained that his probation was not revocable for non-payment of fines because the default was due solely to his inability to raise the money, rather than because of his neglect or willfulness. At the hearing on revocation the government proved only that Taylor had not paid the fines. Taylor offered evidence to establish a bona fide effort to observe the obligation and to show that the failure to pay was due to poverty alone. The record was unclear as to whether the District Court had revoked probation simply for non-payment or whether it had been done because the evidence did not uphold the "assertion of bona fides".

On appeal the government argued that the defendant could not then claim inability to pay because he had accepted probation when originally sentenced. The Fourth Circuit pointed out that Taylor was not relying upon his inability to pay when sentenced but upon his "impecunious state in 1963 when defaulting".

The Court went on to say, 321 F.2d at 341:

> If actually Taylor endeavored in good faith, though in vain, to keep the commandment of the orders, his unsuccess would not subject him to the imprisonment as of course. Bald failure would not necessarily be a transgression. Decisive is his earnestness and effort to fulfill the proviso, as we read the probation statute, 18 U.S.C. § 3651 et seq. Revocation rests in the sound discretion of the trial court, but it is to be justifiably exercised. (Citations omitted). If in reality he was too poor to pay, not to blame for it, and sincere in the try, his probation is not beyond redemption.

The Court held that the plea of pauperism should be further explored.[1]

We perceive no analytical difference in the prerequisites for revocation for non-payment of a fine and non-payment of restitution. In either event, revocation is followed by penalties not otherwise appertaining.

1. It may be that the District Judge did consider the question of Taylor's capacity to pay and, having in mind the evidence produced on his trial, found against his claim of indigence. There it was proved, as our prior opinion notes, 305 F.2d [183] at 186, that Taylor was well educated, a practicing lawyer, a teacher of law, and making a substantial professional income. Other material assets were disclosed by Taylor's evidence at the revocation hearing. The District Judge may have thought also that Taylor evinced no honest desire to raise the money. But, as previously mentioned, we are not certain from the record of the basis for the revocation.

In the circumstances, we cannot say that the District Court went beyond the limits of fair discretion. But for clarification, the plea of pauperism should be further explored, with evidence taken from the United States as well as on behalf of the appellant. The District Judge can then make and state his findings and conclusions on the issue. F.R.Crim.P. 23(c). Even if Taylor is unable at this time to settle the entire amount, it may appear that with his training and ability, and application and industry, over the 5 years of his probation (the appeals have stayed the running of this period, F.R.Crim.P. 38(a)(4)), he could meet this obligation, although only in fixed or graduated monthly instalments. This is his moral as well as legal duty as he is pressing for the leniency and grace of the Court. 321 F.2d 342.

In view of the record presently before us, we find that this case must, regrettably, be remanded for a second time and that another hearing must be held consistently with the teachings of the cases herein cited, leaving the District Court to take such action as may be justified in the light of the hearing.

The basic issue is whether at any time between imposition of sentence and revocation of probation the defendant had resources available which could have been used to make the required restitution, in whole or in part.[2] If during the crucial period he had not the resources and no way to acquire them then probation should not have been revoked for a failure to pay.

On the other hand, if Boswell did have the resources available, then the issue is reduced to whether, in fact, he either negligently or deliberately allowed them to be disbursed or dissipated in a manner that resulted in his inability to pay. It must be remembered, however, that revocation may not be inflicted for occurrences, events, or conditions over which Boswell had no control.

Finally, if revocation should not presently be in order, Boswell remains for the duration of his probationary period under the duty of making such restitution as future events may enable him, within reason, to make.

Whatever the outcome of the hearing on remand the District Court should make findings of fact and state his conclusions of law, in the hope that appeals in this case may appropriately come to an end.

The revocation of probation in this case and the sentence imposed in consequence of the revocation are vacated.

The case is remanded for further proceedings not inconsistent herewith.

VACATED and REMANDED.

2. We see no justifiable reason for quibbling over which specific day should be used as the test date. If Boswell had the resources for restitution, in whole or in part, at any time between sentence and revocation, justice would not be served by allowing him to take refuge behind quibbles over which day he became liable to pay or to suffer revocation of his probation. We make this comment because payment date was, *at Boswell's request,* extended from time to time. Boswell knew all the time that he was liable for sums which could exceed the amount ultimately fixed as actually due.