## RONALD HUMPHREY *v.* STATE OF MARYLAND

[No. 97, September Term, 1980.]

*Decided April 22, 1981.*

The cause was argued before Murphy, C. J., and Smith, Digges, Eldridge, Cole, Davidson and Rodowsky, JJ.

*Claudia A. Cortese, Assistant Public Defender,* with whom was Alan H. Murell, Public Defender, on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and RODOWSKY, JJ., dissent. RODOWSKY, J., filed a dissenting opinion at page 170 *infra,* in which MURPHY, C. J., and SMITH, J., concur.

This case concerns the circumstances under which probation may be revoked. More particularly, it involves the question whether under the facts of this case a probationer had acted in violation of one of the conditions of his probation.

On 30 July 1979, in the Criminal Court of Baltimore, the petitioner, Ronald Humphrey (probationer), was convicted of assault and breaking and entering. The docket entries show that the probationer was sentenced to two consecutive two-year terms, that the execution of sentence was suspended, and that the probationer was released on probation for a period of three years. On the same day, the trial court entered an "order for probation" that indicated that the probationer was released on probation subject to certain general conditions and to "special conditions as follows: Defendant to receive Drug treatment." The probation order did not specify the kind of, extent of, or time within which treatment was to be received.

On 26 November 1979, a probation revocation hearing was held. The sole violation alleged was that the probationer had violated the special condition of the probation order that required him "to receive Drug treatment."

At the probation revocation hearing, the State's only witness was the probationer's probation officer (officer). The officer testified that he was assigned as the probationer's supervisor about seven days after the probationer was placed on probation. At all times the probationer wanted to be enrolled in a drug rehabilitation program. During the initial week of probation, the probationer voluntarily sought treatment. During the second week of probation, both the probationer and the officer repeatedly attempted to obtain a

placement in various community-based treatment programs. Their efforts failed. One agency advised the officer that the probationer "didn't fit their criteria" for admission. A referral service informed the officer that it could not locate a drug abuse program that would admit the probationer "due to the [probationer's] extensive [prior] failure rate and 'propensity towards violence.'" That referral service advised the officer that while the probationer was in its office he acted in a disorderly manner and had to be removed by the police. Finally, the referral service told the probationer "not to return because he was unacceptable for treatment through their agency."

The officer testified that three days after this incident the probationer arrived at the officer's office in an intoxicated state. As a result, the officer arranged to have the probationer sent to Crownsville State Mental Hospital on 13 August 1979. On 19 September 1979, the probationer was transferred to the Baltimore City Jail where he remained until the 26 November 1979 revocation of probation hearing.

At the revocation hearing, the officer further testified that based on the results of an examination conducted at Crownsville State Mental Hospital, the Medical Department of Parole and Probation concluded that the probationer was not amenable to community supervision. Nonetheless, the officer asserted that he was still of the opinion that the probationer could be treated for his drug addiction and his alcohol problem in a community-based program if one would accept him.

The probationer testified that he wanted "to stay off drugs" but that he was having a problem with alcohol and Demerol. He was willing to report to the officer "every day if necessary" if given another chance to stay out of jail. The probationer had repeatedly attempted to be admitted into a rehabilitation program. Indeed, it was his insistence on admission into such a program that caused the disturbance involving the police at the referral service office. He had refused to leave the referral service office "until they got [him] into a program and [he] sat in a chair" until the police arrived. When the police told him to leave, he left.

At the conclusion of the hearing, the trial court said:

"I think what happens is you are a pretty decent guy, you know, if you are not getting involved with drugs. But if you get a few pills or something in you, you have this propensity toward violence. These programs can't afford to have you come in in an angry aggressive manner and threaten people. None of them want you. So I don't know what to do with you. I will say this to you. *You don't belong in jail.* You need help but where can I get it for you." (Emphasis added.)

Thereafter, the court revoked probation and reimposed the two consecutive two-year sentences.

The probationer appealed to the Court of Special Appeals which, in an unreported opinion, affirmed the judgment of the trial court. *Humphrey v. State,* No. 1530, September Term, 1979, filed 25 July 1980 (per curiam). The probationer then filed a petition for a writ of certiorari that we granted. We shall reverse the judgment of the Court of Special Appeals.

A probationer is entitled to retain his liberty as long as he substantially abides by the conditions of his probation. Probation may not be revoked unless the probationer has in fact acted in violation of one or more conditions of his probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 784-85, 93 S. Ct. 1756, 1760-61 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 479-80, 92 S. Ct. 2593, 2599 (1972); *Swan v. State,* 200 Md. 420, 425, 90 A.2d 690, 692-93 (1952). *See Scott v. State,* 238 Md. 265, 275-76, 208 A.2d 575, 580-81 (1965); *Jett v. Superintendent of Md. State Reformatory for Males,* 209 Md. 633, 640-41, 120 A.2d 580, 583-84 (1956); *Rites v. State,* 15 Md. App. 346, 347-56, 290 A.2d 554, 555-60 (1972); *Wilson v. State,* 6 Md. App. 397, 402-03, 251 A.2d 379, 382-83 (1969).

Generally, before probation may be revoked the State must prove that the probationer has not complied with one or more lawful conditions of probation. Even then, ordinarily probation may not be revoked if the probationer proves that his failure to comply was not willful but rather resulted from

factors beyond his control and through no fault of his own. *E.g., United States v. Boswell,* 605 F.2d 171, 173-75 (5th Cir. 1979) (failure to make restitution); *United States v. Taylor,* 321 F.2d 339, 340-41 (4th Cir. 1963) (failure to pay fines); *People v. Romero,* 192 Colo. 106, 107-08, 559 P.2d 1101, 1101-02 (1976) (failure to make payment for attorney's fees); *People v. Silcott,* 177 Colo. 451, 452-54, 494 P.2d 835, 836-37 (1972) (failure to make child support payments); *Donneil v. State,* 377 So. 2d 805, 805 (Fla. App. 1979) (failure to complete drug rehabilitation program); *State v. Nakamura,* 59 Haw. 378, 380-83, 581 P.2d 759, 761-63 (1978) (failure to be accepted in residential drug treatment program); *State v. Oyler,* 92 Idaho 43, 44-47, 436 P.2d 709, 710-13 (1968) (failure to "refrain from the use of alcoholic beverages"); *State v. Moretti,* 50 N.J. Super. 223, 228-29, 238-50, 141 A.2d 810, 813-14, 819-27 (1958) (failure to obtain gainful employment); *People v. Bowman,* 73 App. Div. 2d 921, 921, 423 N.Y.S.2d 242, 243 (1980) (failure to obtain psychiatric treatment); *Butler v. State,* 486 S.W..2d 331, 332-34 (Tex. Crim. 1972) (failure to "work faithfully at suitable employment"). Of course, if the probationer fails to carry this burden, the question whether to revoke probation is a matter within the discretion of the trial court. *E.g., United States v. Burkhalter,* 588 F.2d 604, 605-07 (8th Cir. 1978) (failure to take vocational training). *See Scott,* 238 Md. at 272-73, 208 A.2d at 579; *Edwardsen v. State,* 220 Md. 82, 88-89, 151 A.2d 132, 135-36 (1959); *Swan,* 200 Md. at 425, 90 A.2d at 692. The trial court's determination to revoke probation is reviewable by an appellate court "for the purpose of determining whether that discretion has been abused in any way, or whether an erroneous construction has been placed by the trial judge on the conditions of the [probation]." *Swan,* 200 Md. at 426, 90 A.2d at 692.

Here the sole violation alleged was that the probationer had violated the special condition of the probation order that required him "to receive Drug treatment." That special condition required only that the probationer "receive Drug treatment." It did not specify the kind of or the extent of drug treatment to be received. It did not require the probationer

to be accepted in or to receive drug treatment from a community-based drug treatment program. It did not prescribe when drug treatment was to begin or terminate. The evidence adduced by the State establishes at most that within a two-week period the probationer had not received drug treatment from certain specific community-based drug treatment programs. The State's evidence failed to show that the probationer was not receiving some kind of drug treatment other than participation in a community-based drug treatment program. In addition, it failed to show that the probationer would not obtain some kind of drug treatment within a reasonable period of time. Thus, the record does not support a finding that the probationer acted in violation of the special condition of his probation. *See Rites,* 15 Md. App. at 354, 290 A.2d at 560; *Wilson,* 6 Md. App. at 403, 251 A.2d at 383.

Moreover, the evidence establishes that the probationer was at liberty for only two weeks after placed on probation and that throughout that entire period he made repeated good faith efforts to obtain a placement from various community-based drug treatment programs. He was denied admission to these programs, not because he engaged in any misconduct after he was placed on probation, but rather because of his previous misconduct. Thus, the record shows that the probationer was deprived of the opportunity to participate in a community-based drug treatment program because of factors beyond his control. Because the probationer repeatedly tried to comply with the special condition, engaged in no act of misconduct affecting others during the probationary period, and was prevented from complying with the special condition because of factors beyond his control, the record does not support a finding that the probationer acted in violation of the special condition of his probation. *E.g., Donneil,* 377 So. 2d at 805; *Rathburn v. State,* 353 So. 2d 902, 902-03 (Fla. App. 1977); *Nakamura,* 59 Haw. at 380-83, 581 P.2d at 761-63; *People v. Welch,* 78 Ill. App. 3d 184, 184-87, 33 Ill. Dec. 761, 397 N.E.2d 94, 95-97 (1979); *State v. Lassai,* 366 So. 2d 1389, 1390-91 (La. 1978); *Bowman,* 73 App. Div. 2d at 921-22, 423 N.Y.S.2d at 243-44.

*See, e.g., People v. Turner,* 27 App. Div. 2d 141, 143-45, 276 N.Y.S.2d 409, 410-13 (1967).

The State failed to adduce facts sufficient to show that the probationer did not substantially abide by the special condition of his probation. Accordingly, the trial court erred when it revoked probation.[1]

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to that Court with directions to reverse the judgments of the Criminal Court of Baltimore.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore.*

*Rodowsky, J., dissenting:*

I respectfully dissent.

From what is available before us,[1] it appears that appellant, Ronald Humphrey (Humphrey), age 34 at the time of the revocation hearing, had been on drugs since he was 16. On May 21, 1979 his mother had put him out of the house at about 8:00 a.m. About one-half hour later he returned, broke into the house and chased his sister with a 9-inch butcher knife. Upon his conviction on breaking and entering and on assault charges, sentences totalling four years were imposed. Execution of the sentences was suspended and the defendant was placed on supervised probation. It appears from the written probation order that one of the conditions of the suspension of execution of the sentence was: "Defendant to receive drug treatment."

A handwritten letter dated November 31, 1979 from Humphrey, which has been treated as an order for appeal from the order of revocation, states that the conditions of the

---

1. We note that a trial court can assure the availability of drug treatment by postponing the imposition of sentence until such time as the requisite arrangements for drug treatment have been made.

1. The transcript from the Criminal Court of Baltimore relates only to the revocation hearing of November 26, 1979 but no transcript of the sentencing has been provided.

suspension of execution of sentence "were to get back on [an] out-patient methadone program and recieve [sic] treatment." It therefore appears that there was further specification of the condition of probation articulated at the sentencing hearing sufficient for Humphrey to understand that the condition referred to a community based methadone program.

Based on the trial judge's statements at the revocation hearing, he obviously considered that Humphrey was a person with a propensity toward violence if he "got a few pills or something" in him. The condition of probation can fairly be read to be an effort by the trial court to effect a program of rehabilitation which would be both constructive to Humphrey and at the same time protect the public. The condition of probation, that Humphrey "receive" drug treatment, clearly meant actual treatment under the circumstances presented here. Nothing short of that would satisfy the condition under which the trial judge was willing to suspend the execution of sentence. The condition was a proper one under the test of "whether the [trial] court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant." *Burns v. United States,* 287 U.S. 216, 221, 53 S. Ct. 154, 156, 77 L. Ed. 266, 269 (1932).

In many ways, this case presents the variation on conditions of suspension of the execution of sentence which was recognized in, but was not presented by the facts of, *Wilson v. State,* 6 Md. App. 397, 251 A.2d 379 (1969). The condition which the appellant in that case was charged with violating was: "May go to Lexington, Ky. (U.S. Government Hospital)-School." Wilson tried to get into the program at Lexington but was not successful. The trial judge had revoked probation because admission into the Lexington program was the only basis on which the trial judge had suspended sentence. That revocation was reversed as unjustified under the facts and under a proper construction of the condition of suspension as specified. However, Judge Orth, speaking for the Court of Special Appeals, said at 403 of 6 Md. App., 251 A.2d at 382-83:

In the instant case, if the condition of suspension of the sentence was that the appellant be accepted in the educational program at Lexington so that the mere non-acceptance would violate the condition no matter what the reason, it is not apparent from the order the appellant was charged with violating, nor indeed, is it clear from the remarks of the court at the penalty stage of the trial. It may well be that this is what the court intended but if so it did not conform the probation order it signed to that intention.

In the instant case, it is established without contradiction that Humphrey did not receive treatment at an out-patient methadone program. It is also uncontradicted in the record that Humphrey was not eligible for such a program because his past failures manifested that he was not amenable to community based treatment. I believe, as *Wilson* indicates, that the trial court has the power to make actual receipt of treatment the condition governing its willingness to allow a convicted person with known dangerous propensities to roam the streets. This is what the trial court did in this case and the nonfulfillment of the condition is not really disputed.

More fundamentally, however, I believe the majority has inappropriately applied a fault standard to this case to determine "violation" of this condition. "Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ," although, because it results in a loss of liberty, certain procedural due process requirements must be met. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 1759-60, 36 L. Ed. 2d 656, 661-62 (1973). The emphasis of the majority is on whether Humphrey substantially abided by, or acted in violation of, the condition in the period after imposition of the condition. There is merit to recognizing as a defense to probation revocation that the performance of a condition was beyond the control of the probationer, *e.g.,* the inability of an indigent probationer to make a specified restitution. My point is simply that the concept is not always dispositive.

At the first level of a probation revocation hearing, on the issue of whether nonfulfillment of a condition is a "violation," there has unfortunately been little attention directed by the courts to when lack of fault on the probationer's part might not be defensive. Some attention has been directed to the problem where insanity is presented as a defense. In *United States v. Mercado,* 469 F.2d 1148 (2d Cir. 1972) the district court and both parties had assumed that, if established, the probationer's lack of criminal responsibility, on insanity grounds, for his acts in violation of the terms of his probation would have been a defense to revocation. Judge Lumbard, speaking for a panel composed of himself, Judge Friendly and Judge Feinberg, stated that they could "find no authority for this proposition, and [they did] not believe that the question [was] so free from doubt that it should be determined without benefit of brief or argument." *Id.* at 1152. The Supreme Court of Alaska, in *Trumbly v. State,* 515 P.2d 707, 708-09 (1973) has held as follows:

> On the other hand, we think the short answer to Trumbly's contention is that the defense of insanity is irrelevant to the issues which are to be determined in a probation revocation hearing. At such a hearing, the inquiry is focused on whether the probationer engaged in conduct violative of the conditions under which he was permitted to escape incarceration. We are not persuaded that a probationer should be able to prevail upon an assertion that his probation should not be revoked because mental illness renders him unable to conform his conduct to the terms of his probation. Conformity to reasonable and lawful terms of probation is a prerequisite to the continuation of probationary status.

*See also United States v. Manfredonia,* 341 F. Supp. 790, 794 (S.D.N.Y.), *aff'd,* 459 F.2d 1392 (2d Cir.), *cert. denied,* 409 U.S. 851, 93 S. Ct. 61, 34 L. Ed. 2d 93 (1972).

The author of a Note, *Judicial Discretion and the Problem of the Mentally Ill Probation Violator,* 5 U.C.L.A.-Alaska L. Rev. 284 (1976), which was prompted by the *Trumbly* deci-

sion, suggests that there are at least two types of situations involving unintentional violations of probationary conditions to which an analysis based on the lack of fault, or inability to control, of the probationer seems inapplicable. "The first type of case occurs when the primary goal of probation is something other than the rehabilitation of the probationer, so that whether he makes an honest effort or not is less important than whether he is able to meet the conditions imposed." *Id.* at 296.[2] The second type of case in which it is suggested that the good faith of the probationer may not be controlling "arises where the violation results from a factor beyond his control but not external to him. Unlike the usual case, in which the unintentional violation is caused by some outside condition which is both unrelated to the violator's potential for rehabilitation and easily alleviated, the violation here does bear on the suitability of the violator for continued probation." *Id.* at 296-97.

I would recognize the foregoing reasoning in the instant case. Once it was established that the condition that Humphrey actually receive drug treatment in a community based program could not be fulfilled, there was a "violation" which could support revocation. The trial court then had to determine whether Humphrey was suitable for continued release without that control imposed upon him. The trial court in essence concluded that he was not and reluctantly ordered that the sentence originally imposed be served. In so doing he acted, in my opinion, within his power and discretion.

---

2. Illustrative of this class of case is Genet v. United States, 375 F.2d 960 (10th Cir. 1967) where the condition of probation was that the defendant support his 5 children in accordance with a support order in a divorce case in state court. The defendant was financially unable to make the payments. It was held that there was no abuse of discretion because "under some circumstances the good faith of the probationer need not be controlling and the factual failure of non-compliance may be the prime consideration in exercising judicial discretion." *Id.* at 962. The trial court was firmly of the opinion that defendant deserved imprisonment and the conditional probation was granted, not as an instrument of rehabilitation nor as an element of punishment, but as a continuing assurance to the welfare of the children. When that reason for probation was dissipated, even though not through the defendant's affirmative fault, the Tenth Circuit was unable to say that discretion was abused.

Chief Judge Murphy and Judge Smith have authorized me to state that they concur in the views expressed in this dissenting opinion.