524 A.2d 106

**Charles R. BRYANT**

v.

**STATE of Maryland.**

**No. 1144, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 16, 1987.

Certiorari Denied Aug. 3, 1987.

144

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Patricia Storch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Brook Murdock, Asst. State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MOYLAN, WILNER and POLLITT, JJ.

MOYLAN, Judge.

The appellant, Charles R. Bryant, was initially convicted of driving while intoxicated and related offenses. He was ultimately placed on probation for three years and ordered to pay a fine of $1,000 and court costs of $135. He entered into an agreement with his probation officer to make payment at the rate of $35 per month. This appeal arises from a judgment by the Circuit Court for Baltimore City that the appellant violated the terms of his probation by failing to make the scheduled payments. The appellant was ordered to serve the remaining portion of the original sentence. The sole issue on appeal is whether the judge abused his discretion by revoking the appellant's probation.

■ Cases such as this pose an agonizing problem for the courts. On the one hand, resources do not permit or justify a lengthy adversary hearing. Since probation is a matter of grace, the obligation is properly upon the probationer either to fulfill the conditions of probation or to satisfy the court that there was a good reason for noncompliance with those conditions. *Humphrey v. State*, 290 Md. 164, 167–168, 428 A.2d 440 (1981). We do not retreat from that principle. On the other hand, some allowance must be made for the physical, mental, educational, and/or cultural inadequacies of some probationers, and the probation-revocation system must constantly guard against allowing itself to become an assembly line.

The appellant, initially placed on probation on March 26, 1985, remained on good behavior for the 18 months between then and his probation revocation hearing. No charge was brought by the Probation Department that he failed to keep scheduled appointments. The charge was that, save only a token payment of $20 on one occasion, he made no effort to pay the $1,135. The appellant interposed a claim of financial inability to make the payments.

The information supplied by the probation officer was painfully skimpy. Introduced into evidence was an agree-

ment, signed by the appellant, to pay $35 per month beginning on April 26, 1985. The agreement, however, made little sense in that the appellant was incarcerated at the time he signed the agreement and was not released until August 16, 1985. Concededly, the ultimate finding of delinquency was for a period of time following that release from jail, but the pro-forma nature of the agreement itself throws light on the routine, impersonal, and assembly-line handling of the probationer's obligations.

The appellant, a 50–year–old man with a fifth-grade education, took the stand and testified that shortly after his release from jail he broke his leg, was hospitalized at the Bon Secours Hospital, and was in a cast for a period of some months. There was no indication that the appellant's testimony in this regard was disbelieved by the trial judge. Indeed, on the occasion of a subsequent visit of the appellant to his probation officer, he came in with a bruised leg and complained to the probation officer about it. The appellant's testimony indicated that he was placed on Social Services because of his medical problems, both with his leg and with seizures. He testified further that since being incarcerated for the alleged probation violation, he had been to the clinic of the Baltimore City Jail. The personnel at the clinic had put his leg in an Ace bandage apparently because it was "out of place."

Even while recognizing that the burden is allocated to the appellant to prove the inability to find work rather than to the State to prove the contrary, we cannot help but observe that the Probation Department could have done more by way of checking on the appellant's medical condition, his treatment at the Bon Secours Hospital, and his status with the Department of Social Services. Virtually the sum total of refutation of the appellant's claim of medical disability was reference to the appellant's failure to inform the Probation Department of his condition. While a more gifted probationer might have built his case more diligently than

did the appellant here, we cannot blink at the reality that all probationers are not necessarily gifted.

■ Although we sympathize with the frustration of the trial judge in a situation such as this, we nonetheless conclude that the appellant, through his testimony, established at least a *prima facie* case of an inability to find work. It was, indeed, more than a *prima facie* case, for there was no indication that the concrete facts were disbelieved. Under the circumstances of this case, we feel that the almost cavalier failure of the State to refute in any way the appellant's claim renders the finding that he wilfully failed to make payments clearly erroneous. Mere skepticism as to whether he was making a *bona fide* effort to find work is simply not enough, on the facts of this case, to take away his liberty. We are by no means holding that there is any obligation on the part of the State, in a vacuum, to prove a probationer's ability to pay or disinclination to seek work. Nor are we suggesting that some vapid protestation of inability to work, clearly disbelieved, imposes any obligation on the State to respond. We are only holding, under the special circumstances of this case, that where there is put forth a colorable defense of incapacity to pay, where there is some extrinsic corroboration of that defense, and where there is no apparent inclination to disbelieve the actual events testified to by the probationer, the State is under some obligation to show something other than the fact of the nonpayment itself. The appellant here, of course, remains under a continuing obligation to make the payment that has been ordered. If at some future time the State would elect to proceed for some future alleged violation of the ongoing terms of probation, the record produced will hopefully be less skimpy than the one before us here. With liberty at stake, the process has to be more than routinely mechanistic.

JUDGMENT REVERSED; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.