[725 NYS2d 686]

The People of the State of New York, Appellant, v John F. Costanza, Jr., Respondent.

Third Department, May 3, 2001

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz*, Albany (*Sarah W. Birn* of counsel), for appellant.

*Penelope D. Clute, District Attorney* of Clinton County, Plattsburgh (*Marybeth Dumont* of counsel), for respondent.

## OPINION OF THE COURT

CARPINELLO, J.

Defendant challenges whether the People proved by a preponderance of the evidence that he violated certain terms and conditions of his probation (*see*, CPL 410.70 [3]). Our review of the record established that they did. Moreover, contrary to defendant's contentions, no aspect of the notice in this matter, the probation violation hearing itself or County Court's decision revoking probation denied him due process (*see, e.g., Black v Romano*, 471 US 606, 610-612).

On July 10, 1998, defendant pleaded guilty to attempted burglary in the second degree, criminal mischief in the fourth degree and petit larceny based on conduct committed in Clinton County following a breakup with his girlfriend. He was sentenced to five years' probation to be supervised by the Albany County Probation Department, defendant having relocated to that County. Two special conditions of probation were that he "refrain from any and all intimidating, threatening, and abusive behavior by any means" and that he complete a violence intervention program, including compliance with all recommendations of that program or any other *approved* probation program designed to address battering violent behavior. On September 10, 1998, Albany County Probation Officer William Schaefer, who supervised defendant's probation between September 1998 and May 1999, reviewed all probation conditions with him, specifically addressing the requirement that he enter and complete a violence intervention program. Defendant was informed that only three such programs were available in Albany County, the Center for Hope and Alternatives, Project Equality and the Hudson Mohawk Recovery Center, all 52-week programs.

Despite defendant's knowledge that he was required to complete a program to address his violent behavior, an October 16, 1998 notation in his probation record reflects that he was "hostile" about this requirement. Subsequent file notations reveal that he was claiming to be a victim in this case. Of note, a November 12, 1998 notation states that "the concept of [defendant] calling himself a victim" was discussed and defendant was informed that this "will not be tolerated by [p]robation in [the] future." Later that same month, defendant asked if he could fulfill his court-ordered obligation by "engag[ing] a therapist on a one-on-one basis with the intent to address the issues as laid out by the Court." This request was unequivocally denied. In a December 4, 1998 letter from Schaefer, defendant was informed that his "patent unwillingness to accept culpability for [his] felony acts and [his] refusal to cooperate with the intake process have resulted in [his] present situation." Indeed, it was established at the violation hearing that although defendant had participated in the intake processes at both the Center for Hope and Alternatives and Project Equality, he was denied admission to the former because he was too negative and to the latter because he refused to sign a release for psychological records, a program requirement.

In late January 1999, defendant was finally accepted into the 52-week Hudson Mohawk program, received the program requirements and began attending group sessions in mid-February. At the violation hearing, defendant candidly admitted his awareness that the philosophy of this program was "[t]o address battering and violent behavior." Nonetheless, two months into the program, defendant was informed by Schaefer that program compliance reports indicated that he was not progressing as required. According to the March 1999 report, defendant had been advised that the tenor of his participation was a problem. It also reported that defendant "continues to deny the actions and behaviors for which he was convicted * * * [which] is of concern to the program because identification of personal abusive behavior is necessary for not only program *compliance* but program completion" (emphasis supplied). Defendant was placed on program probation at this time.

On April 8, 1999, an administrative hearing was held to address certain violations of probation. At this hearing, defendant was informed that "he was close to discharge from [the Hudson Mohawk] program for failure to comply" and that he had one more chance to comply with all probation conditions. According to Schaefer, defendant had no questions at this time

"as to his responsibilities relative to attending" the program. On June 16, 1999, following April and May reports that he was continuing to deny any wrongdoing and blaming the victim, defendant was discharged from the program. Defendant himself admitted at the violation hearing "that he probably could have answered [questions] better" at therapy sessions.

Shortly after his discharge, the Clinton County Department of Probation filed a probation violation petition alleging that defendant violated those special conditions of probation which required him to complete a violence intervention program and refrain from intimidating behavior. This latter charge concerned his attempt to intimidate Schaefer by contacting the office of a high ranking County official and reporting that Schaefer had threatened to physically harm him, as well as his alleged intimidating telephone conversations with the office staff of a local mental health clinic. Following a lengthy hearing, County Court determined that defendant violated probation, probation was revoked and he was sentenced to concurrent, six-month jail terms. Defendant now appeals.

■ We address first defendant's claim that County Court applied the wrong evidentiary standard in this case by failing to require the People to prove that his discharge from the Hudson Mohawk program was willful and/or voluntary. Defendant argues, citing *Humphrey v Maryland* (290 Md 164, 428 A2d 440), that when County Court refused to place the burden on the People to demonstrate that he engaged in willful behavior that caused his discharge from the Hudson Mohawk program, the court "acted in error and in violation of a nationally recognized requirement with respect to the revocation of probation." While this case does stand for the general proposition that probation may not ordinarily be revoked if the failure to comply with a lawful condition was not willful, the Maryland Court of Appeals places the burden of proving same squarely on the *probationer*, holding that "ordinarily probation may not be revoked *if the probationer proves* that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own" (*id.*, at 167-168 [emphasis supplied]). Thus, neither this decision nor any other relied upon by defendant[1] successfully advances his claim that the court applied the wrong evidentiary standard. Moreover, consistent with *Black v Romano* (471 US 606, 612, *supra*), we find that the burden of proving a justifiable excuse for a probation violation is on the *probationer*.

---

1. Contrary to defendant's contentions, we do not find the principles espoused in *People v Outley* (80 NY2d 702 [concerning a no-arrest condition in a plea agreement and a defendant who was arrested prior to sentencing

■ Upon our review of the entire record, particularly the evidence as thus outlined, we agree with County Court's conclusion that the People satisfied their burden of proving by a preponderance of the evidence that defendant violated each of the subject conditions of probation, particularly the condition that he complete a violence intervention program.[2] While hearsay evidence was indeed introduced at the hearing (*see,* CPL 410.70 [3]), which by itself would be insufficient to prove a probation violation (*see, People v Raleigh,* 184 AD2d 869, *lv denied* 80 NY2d 908; *People v Styles,* 175 AD2d 961, *lv denied* 79 NY2d 923), we reject defendant's contention that County Court's findings of a violation are based "solely" on hearsay. The record most certainly includes other competent evidence, particularly the testimony of Schaefer and defendant, sufficient to establish that defendant, cognizant of the conditions of probation (*see, People v Garey,* 243 AD2d 844, 845) and the conditions of the Hudson Mohawk program (*see, People v Brothers,* 268 AD2d 607), failed to successfully complete an approved program to address his violent behavior, thus violating probation (*see, People v Rushin,* 196 AD2d 835, *lv denied* 82 NY2d 808; *People v Raleigh, supra; People v Styles, supra; People v Krzykowski,* 121 AD2d 831). The record further dispels defendant's claims that revocation was improper because he acted in good faith in carrying out the terms of his probation or that the violation was because of factors beyond his control (*see generally, People v Trevor QQ.,* 123 AD2d 465; *cf., People v Bowman,* 73 AD2d 921).

In the context of arguing that his due process rights were violated in this case, defendant contends that he was unaware that the Hudson Mohawk program required him to accept

---

for an act which is denied]) or *Spence v Superintendent, Great Meadow Correctional Facility* (219 F3d 162 [concerning a "no-misconduct" condition in a plea agreement]) to be applicable to this case. Moreover, since this case does not involve an indigent probationer's inability to pay a fine or restitution, *Bearden v Georgia* (461 US 660) is likewise inapposite.

2. With repeated statements that he was not charged with committing verbal or physical abuse against his former girlfriend and repeated characterizations of his crimes as "property" crimes only, defendant bemoans the condition of probation requiring him to complete an intervention program. Defendant was given the benefit of a favorable plea (the indictment originally contained 10 counts), which included the *privilege* of probation with full knowledge and understanding of all conditions and terms thereof, including the requirement that a violence intervention program be completed. Noting that defendant never moved to withdraw his plea or vacate this sentence, the innuendo throughout his brief that the inappropriateness of the condition itself should serve as a basis upon which to reverse is unpersuasive (*see generally, People v Moon,* 225 AD2d 826, *lv denied* 88 NY2d 939).

responsibility for his behavior *before* expiration of its 52-week duration or suffer early termination.[3] According to defendant, because this requirement is enumerated as a requirement for program "completion," as opposed to a general program requirement, he believed that he could only be discharged early for violating rules such as coming to class under the influence of alcohol or drugs, being disruptive or engaging in physical violence toward others. Even assuming that this interpretation of the contract is reasonable (which we do not), defendant was unequivocally advised *eight* weeks into the program that identification of abusive behavior was necessary for program *compliance*, he was advised in early April 1999 that he was in jeopardy of being discharged from the program for failing to address these requirements and he was again advised in early June 1999 that he was not complying with these aspects of the program (*see, People v Allen W.*, 129 AD2d 867, 868). Suffice it to say, both the condition of probation as outlined by County Court and the conditions of the program itself were sufficiently clear and explicit, thus implicating no due process violations (*compare, People v McDonald*, 136 Misc 2d 1047).

Finding as we do that defendant failed to successfully complete a violence intervention program as ordered by County Court, we further find that it was not an abuse of discretion to revoke probation on this basis alone (*see, People v Styles, supra*; *People v Bacchi*, 112 AD2d 940, *lv denied* 67 NY2d 648; *see generally, People v Davis*, 260 AD2d 294, *lv denied* 93 NY2d 1002). We are also equally satisfied that the decision to revoke probation satisfied the requirements of due process, as due process does not *require* a court to consider alternatives to incarceration before revoking probation (*see, Black v Romano*, 471 US 606, 611, *supra*) or hold a separate mitigation hearing (*see, People v McCloud*, 205 AD2d 1024, *lv denied* 86 NY2d 738). Rather, a decision to revoke probation involves but "two distinct components: a retrospective factual question to determine whether there were violations of the terms of probation, and thereafter a discretionary determination regarding whether the violations warrant revocation of probation" (*id.*, at 1025).

To the extent that defendant claims that County Court "refused to allow him to introduce evidence of his enrollment and progress in other [batterer intervention programs]" before

---

**3.** The contract states that one requirement for program completion is that the "[p]articipant has accepted responsibility for violent behavior; ceased to blame the victim for violence; and recognized the adverse effects of his violent acts."

sentencing him to jail, we are unpersuaded. At the revocation hearing, defendant was not permitted to present evidence that the program in which he enrolled *subsequent* to filing of the violation petition is approved in other counties and that his attorney unsuccessfully attempted to get the Albany and Clinton County Probation Departments to review it (ostensibly to approve defendant's participation in it nunc pro tunc). County Court properly deemed such evidence irrelevant to the issue of whether defendant violated the terms of probation prior to the violation petition. In any event, defendant was successful in establishing that he voluntarily engaged in one-on-one therapy with a psychologist and substantially completed a 26-week, nonapproved violence intervention program. Indeed, County Court took judicial notice of the fact that defendant made an attempt to remedy his violation of probation by enrolling in this program (*see generally*, *People v Gagnon*, 245 AD2d 593, *lv denied* 91 NY2d 925).

The crux of defendant's argument appears to be that his efforts in this regard support a sentence of continued probation, a contention which we reject. Even assuming that defendant was a model patient in his one-on-one therapy and a model participant in the nonapproved program, he had been forewarned that this therapy could not supplant the requirement that he attend an approved violence intervention program. Thus, his alleged success in this regard does not, in our view, constitute sufficient mitigating evidence to support a continuation of probation. More importantly, no court should tolerate a probationer's attempt to rewrite the conditions of his probation or to self prescribe the appropriate treatment regimen. Rewarding defendant with continued probation under these circumstances would infringe on the fundamental notion that *courts* in this State impose probation conditions as they see fit based on a defendant's criminal conduct and that the respective *county probation departments* implement probation conditions by, *inter alia*, screening and selecting appropriate intervention programs for probationers within their jurisdictions.

Defendant's remaining contentions have been reviewed and rejected as without merit.

CARDONA, P. J., MERCURE, MUGGLIN and ROSE, JJ., concur.

Ordered that the judgment is affirmed, and matter remitted to the County Court of Clinton County for further proceedings pursuant to CPL 460.50 (5).