### BOARD OF EDUCATION OF HOWARD COUNTY *v.* HOWARD COUNTY, MARYLAND

[No. 959, September Term, 1979.]

*Decided April 15, 1980.*

The cause was argued before MOYLAN, MASON and LISS, JJ.

*Charles A. Reese,* with whom were *Reese & Carney* on the brief, for appellant.

*Paul T. Johnson, Assistant County Solicitor for Howard County,* with whom was *Timothy E. Welsh, County Solicitor,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This case involves a dispute between the Board of Education of Howard County (hereinafter, the Board), appellant, and Howard County (hereinafter, the County), appellee, as to which entity has the ultimate control over the expenditure of county transfer tax funds. The dispute arose when the Howard County Council adopted Budget Ordinance No. 20 for fiscal year 1979, which became effective on July 1, 1978. In September of 1978, the Board filed a bill of complaint for declaratory judgment in the Circuit Court for Howard County seeking a declaration by the court that the action of the Howard County Council in adopting Amendment No. 1 to Council Bill No. 20 of the 1978 Legislative Session was illegal and void. It further sought a declaration by the court that the Council was legally required to approve that portion of the education budget which had been submitted by the Board and approved by the County Executive entitled "School Construction and Site Acquisition Fund," which provided for an expenditure of $600,000 on these items. The bill of complaint further asked for a declaration by the court that the County Council had no authority in its budgetary process to exercise discretion over the use of county transfer tax funds which were earmarked for school site acquisitions and construction funds. Finally, the bill of complaint sought

a declaration that the County Council exceeded its authority in adding certain "back-up" material to the Board's budget approved by the County Executive by way of amendment.

The County filed its answer requesting the court to declare that the Council's amendments to Bill No. 20 were valid; that Howard County, through the County Council and the County Executive, had control over the expenditure of transfer tax funds; and that the Board must, in the future, submit budgets in compliance with the "by project" requirement of Section 5-101 of the Education Article of the Annotated Code of Maryland (1978).

The case was submitted to the court upon a stipulation of documents and evidence and upon the testimony of one witness called by the County. The presiding judge (Macgill, J.) in his opinion and decree, declared that the Board was required to designate in its capital budget each school site improvement and school construction by project including site improvements funded by the county transfer tax. The opinion also stated that the county transfer tax revenue was required to be treated as any other funding source of revenue under Title V, Subtitle 1 of the Education Article. The effect of these two declarations was to give the Howard County Council the power to approve or disapprove the expenditure of county transfer tax funds used for site acquisition or construction of school facilities. In addition, the court declared that the Council acted improperly in adding the "back-up" materials to the Board's budget, and that it should have returned the education budget to the Board for further consideration and action by the Board. The Board, dissatisfied with the court's declarations, filed this appeal. It raises two issues to be decided:

1. Whether the lower court erred in declaring that the Howard County Council had control over the expenditure of county transfer tax proceeds designated for school site acquisition and construction?

2. Whether the Board failed to submit its requested budget in compliance with Section 5-101 of the Education Article?

1.

By Chapter 515 of the Laws of Maryland, 1965, which became effective on June 1, 1965, the Legislature amended the Public Local Laws of Howard County by adding Sections 199A and 206A. Section 206A(a) provided that a tax was to be imposed on every instrument of writing conveying title to real property offered for record and recorded with the Clerk of the Circuit Court for Howard County. Subsection (d) of that Section provided that the Clerk of the Circuit Court was required to pay over to the County Treasurer the proceeds of the transfer tax and that the County Treasurer was authorized to hold the proceeds in two separate funds, one-half to be credited as a school acquisition and construction fund, the other one-half to be credited to a parkland and watershed facilities fund. Disbursements out of the first fund were restricted to the purchase of school sites and the construction of school buildings as authorized by Section 199A.

At the time of the adoption of the aforementioned public local laws, Article 77, Section 68 of the Annotated Code of Maryland (1957, 1964 Supp.) controlled the powers and responsibilities of the county boards of education. That section required the Board, subject to the rules and regulations of the State Board of Education and with the advice of the County Superintendent, to prepare an itemized and detailed school budget showing the expenditures required to be made in the operation of the schools and the amount required to be raised by local taxation. The budget was required to be submitted in writing to the County Commissioners twenty days before the date for the levying of county taxes, and the Board of County Commissioners was authorized and required to levy and collect such taxes upon the assessable property of the county as would produce the amount requested to be raised by local taxation in the annual budget of the Board. Minimum and maximal levels of taxation were designated with the County Commissioners being authorized to approve an additional tax over the stated maximum. In the event the Commissioners did not

sanction the levy of an additional tax over the stated maximum, the Commissioners were required to advise the Board in writing which items of the education budget were denied in whole or in part.

The county transfer tax law was amended by Chapter 257 of the Laws of Maryland in 1968, but the amendment had no effect on the funds designated as the School Site and Construction Fund. In 1969, the Legislature amended the Public Education Law, and Section 68 became Section 117 of Article 77. In 1978, the Legislature adopted the Education Article of the Annotated Code of Maryland. The pertinent provisions of the new Education Article are contained in Section 5-101, which is substantially the same as the 1969 amendment as it relates to the issue before us. Section 5-101 sets out the requirements for the preparation of the annual school budget as follows:

(b) *Preparation of annual budget.* — (1) Subject to the rules and regulations of the State Board and with the advice of the county superintendent, each county board shall prepare an annual budget according to:

(i) The major categories listed in this section; and

(ii) Any other major category required by the State board.

(2) The budget shall be submitted with any reasonable supporting detail that the county fiscal authority may require.

(c) *Categories.* — The budget shall be prepared to include the following categories:

* * *

## Part II

(3) School construction fund, estimated receipts:

(i) Revenue from local sources;

(ii) Sale of bonds;

(iii) State General Public School Construction Loan;

(iv) Revenue from State sources;

(v) Revenue from federal sources;

(vi) Unliquidated surplus, the actual from the previous fiscal year and the estimated for the current fiscal year, whether accrued from revenues or expenditures; and

(vii) Funds from all other sources, with identification of the source.

(4) School Construction Fund, requested appropriations:

(i) Land for school sites;

(ii) Buildings and the equipment that will be an integral part of a building by project;

(iii) School site improvement by project;

(iv) Remodeling by project;

(v) Additional equipment by project; and

(vi) Debt service

Section 5-101 (c) (4) requires the education budget to establish categories and refers to projects.

In November of 1968, Howard County adopted a charter form of government. Section 417 of the Howard County Charter provides as follows:

THE BOARD OF EDUCATION. The Board of Education shall be constituted and shall do and perform such duties and functions as provided by law. Nothing in this Charter shall be held or construed as effecting or in anywise changing the organization, operation and administration of the school system by the Board of Education as provided by law.

The Howard County Charter, Section 210 (c) required a compilation and codification of all Public Local Laws of the County. In this compilation, the county transfer tax law was included in Section 20.400, Section 20.404, and Section 9.102. As Howard County went from a County Commissioner form of government to a County Executive and County Council form, the provisions of the county transfer tax were modified to reflect the change in the form of government.

Howard County Council Bill No. 20, 1978 Legislative Sessions, and its amendments is the budget ordinance at issue in this case. The specific item of controversy in this case involves the fate of the Lisbon Elementary School located in the western portion of Howard County. The issue is, however, much broader than the Lisbon school site disposition as it involves the question as to who shall have the final authority to authorize the expenditure of transfer tax funds held by the County Treasurer in the School Acquisition and Construction Fund.

The Lisbon Elementary School began operation in the 1920's. In 1972, the Board of Education authorized a comprehensive technical study of the feasibility of modernizing the school. The study concluded that it was not economically feasible to modernize the structure due to the age and condition of the building. The Maryland Public School construction program provided funds for the building of a new Lisbon Elementary School which went into operation in March of 1976. The old school was used for a brief period to house children from West Friendship Elementary School during the modernization of that school. In May of 1977, the Board offered to the County through the County Executive the possibility of utilizing the old Lisbon building for county governmental purposes. The County Executive informed the Board that after investigation the County had determined that there was no feasible public use for the structure. Pursuant to that notification, the Board passed a resolution stating that there was no further educational purpose for the building but that the remaining

acreage could be utilized as a portion of the adjoining new Lisbon Elementary School and to provide a new access road from the new school to Maryland Route 144. The resolution also called for the demolition of the old building. Funding to implement the Board's resolution was included in the Board's budget submitted to the County Council.

The County Council as part of its consideration of the Board's budget heard testimony from a number of residents and community groups in the Lisbon area. These witnesses pointed out the need for a physical plant in the western area of Howard County in which to house health, recreation, library and social services. They also advised the Council that the old Lisbon school building had over the years been the site for many of these activities in the Lisbon area. The County Council agreed with these witnesses that the old Lisbon structure should not be torn down "until there was a definite program provided in the budget for a replacement structure to house these necessary government services." As the Council could not provide for such a replacement structure on its own authority, it refused to appropriate the amount requested by the Board for the razing of the old Lisbon Elementary School.

It is conceded that prior to the 1977 Legislative Session of the County Council, the Board had spent the proceeds of the transfer tax without express authority from the County Council. The County Council had not, since its formation, exercised any discretion in the expenditure of these funds for site acquisition or school construction. This situation changed, however, when Bill No. 21 of the 1977 Legislative Session of the County Council, which was the fiscal year 1978 County Budget Ordinance, was submitted for approval. The Budget submitted by the Board of Education and approved by the County Executive under Project No. E-7-0900 entitled "School Construction and Site Acquisition Fund" showed a sum of money that the Board of Education held from previous years and estimated as revenues from the transfer tax funds which it would utilize for a site acquisition in school construction. In Council Bill 21, 1977 Legislative Session, however, the County Council did not

approve the expenditures of these funds and in that budget ordinance established a new project E-8-0050 entitled "Future Site Revolving Fund" and placed only $50,000.00 of transfer tax monies in that fund. They further footnoted Project E-7-0900 as follows: "Funds from this account are derived from one-fourth of the transfer tax and may only be spent when authorized by transfer of appropriation ordinance, initiated by the County Executive and approved by the County Council." The Board objected to this procedure in the Budget Ordinance, and after a number of conferences with the members of the County Council, the Council took legislative action to correct these two items in Council Bill 21. As a result of these conferences, on December 5, 1977, a memorandum of understanding between the Board of Education, the County Executive, and the County Council was reached. In substance, the memorandum of understanding provided that the Board would continue to provide in its capital budget under a "School Construction and Site Acquisition Fund" the transfer tax monies as part of its anticipated revenues and expenditures, and that further the Board would provide to the Council certain "back-up" materials that would show specifically how the funds were to be used by the Board. This was consistent with the procedure that was being utilized by the Board. The memorandum of understanding included other points of interest between the parties with respect to transfer tax monies and site acquisitions.

Consistent with its past procedure and its understanding of the memorandum agreement, the Board submitted its budget for fiscal year 1979 designating, under Project No. E-9-0050 entitled "School Construction and Site Acquisition," its anticipated expenditure of the county transfer tax fund. "Back-up" materials were attached to the budget showing the specific expenditures. It was from those "back-up" materials that the Council deleted the funds for the Lisbon Elementary School site improvement.

The trial court in its opinion and decree declared that it was not the legislative intent of the General Assembly in enacting Chapter 515, Section 1 of the Laws of Maryland and

Chapter 256, which now appears as Sections 20.404-405 and 9.102 of the Howard County Code, to treat county transfer tax revenues any differently from any other source of revenue. In effect, the trial judge held that Section 9.102 was not intended to deny the County Council its control over the appropriation of transfer tax funds through the normal budget approval process pursuant to Section 5-106 (b) and (c) (1) of the Education Article of the Annotated Code of Maryland (1978). We agree with these conclusions.

The trial judge rested his decision on two principles of statutory construction. He stated them as follows:

> First, the General Assembly is presumed to have acted with full knowledge of the policy of the existing general law when it enacted the public local law establishing the transfer tax fund. . .

> Second, in order for one statute to alter or limit another, the intention of the Legislature to do so must be clear and manifest; otherwise the requirements of one will be construed as embodying the provisions of the other. *City of Baltimore v. Clerk,* 270 Md. 316, 319, 311 A.2d 261 (1973); *Welsh v. Kuntz,* 196 Md. 86, 97, 75 A.2d 343 (1950).

Appellant, at the trial below and in this Court, argues that the trial court failed to take into account the fact that the Public General Law, now Title V of the Education Article and formerly Article 77, Section 117 of the Annotated Code of Maryland, was enacted in 1969, four years after the Public Local Law, Section 9.102 of the Howard County Code (the transfer tax law) was enacted. Appellant argues that the rules of statutory construction utilized by the trial court are inapplicable as the General Assembly could not have had knowledge of the general law policy of Title V when it enacted Section 9.102 because Title V did not exist at that time. Appellant further argues that Section 9.102 could not be construed as embodying the provisions of Title V for the same reason. We do not find these arguments persuasive because they fail to take into account the law as it existed in 1965.

The County Council, in its action on Bill No. 20, the budget ordinance for the fiscal year 1978-79, was not *legislating* as suggested by the appellant. In *Schneider v. Lansdale,* 191 Md. 317, 326, 61 A.2d 671 (1948), the Court of Appeals held that the adoption of a budget and enactment of appropriations was not legislation and was "not a new power conferred upon the counties by Article XIA [of the Maryland Constitution], but on the contrary is a power always previously exercised by some local agency in every county." *See, Griffin v. Anne Arundel County,* 25 Md. App. 115, 333 A.2d 612 (1975). Under these circumstances, when the transfer tax legislation was adopted in 1965, the general budget and appropriation power was vested in the County Commissioners of Howard County (the legal predecessors of the Howard County Council) under Article 25A of the Annotated Code of Maryland (1957) and Sections 48-51 of Article 14 of the Public Laws of Howard County (1965).

There is agreement between the appellant and appellee that the purpose of the transfer tax legislation (Section 9.102) as originally enacted was to create a special fund to be used exclusively for school site acquisition and construction. However, the language of that enactment that "The County Commissioners shall direct the Treasurer of Howard County to pay to the Board of Education of Howard County such funds as the Board may from time to time request, . . ." does not indicate a clear intention on the part of the General Assembly to clothe the Board with carte blanche powers to determine how much should be spent in any fiscal year for any particular project, nor do we believe the enactment deprives the County Council and County Executive of their traditional powers to review the budget submitted to them and to approve or disapprove the expenditure of funds requested by the Board. If this were, in fact, the intention of the Legislature it could have adopted language in the legislation which would have made clear that the County Executive and the County Council were *required* to approve the expenditure of transfer tax funds as stated by the Board. The Court may not insert language to make a statute express an intention not clearly evidenced in

the legislation as adopted. *Police Commissioners of Baltimore City v. Dowling*, 281 Md. 412, 379 A.2d 1007 (1977); *Harden v. Mass Transit Administration*, 277 Md. 399, 354 A.2d 817 (1976).

In an analogous case, *Board of Education of Montgomery County v. Montgomery County*, 237 Md. 191, 205 A.2d 202 (1964), the Court of Appeals held that the General Assembly had intended by the enactment of Article 77, Section 159 (o) of the Annotated Code of Maryland (1957, 1964 Supp.) to strip the Montgomery County Council of its power as the appropriating authority in the matter of hiring of professional and clerical assistants included in the budget submitted by the Montgomery County School Board. But the language in that statute went far beyond the language of the statute here being considered when it stated in part:

> [t]he board of county commissioners [the Council] *shall* levy sufficient funds to meet the scale of salaries provided for in this section and *shall not deny any part of the amount requested for any one school year by the county board of education to be raised by local taxation for the payment of salaries of the professional and clerical assistants of the county superintendent * * *. [Id. at 199-200.]

As written, the legislation under consideration in the present case merely provides for the establishment of a specific fund to be accumulated out of transfer tax revenues to be used for specific educational purposes.

We conclude the trial judge was correct in adopting as his second criterion for determining legislative intent the rule of statutory construction which states that legislative enactments are to be construed in harmony with their respective objects and tenors so as to give effect to each of them even though they are passed at different times and contain no reference to each other. *Department of Natural Resources v. France*, 277 Md. 432, 357 A.2d 78 (1976); *Smith v. Gray Concrete Pipe Co., Inc.*, 267 Md. 149, 297 A.2d 721

(1972); *Welsh v. Kuntz, supra.* When the provisions of one statute are construed to embody the provisions of another, the order of enactment is irrelevant. *Mayor & City Council of Baltimore v. Clerk of Superior Court of Baltimore City,* 270 Md. 316, 311 A.2d 261 (1973). In *Vermont Federal Savings & Loan Association v. Wicomico County,* 263 Md. 178, 283 A.2d 384 (1971), the Court of Appeals held that a public local law enacted prior to a public general law was to be construed as supplemental rather than conflicting legislation. Upon analysis, it is clear to us that considering the statutes together in the case at bar, the legislative intent was to establish a fund to be used for the purposes of school site acquisition and construction and to permit those funds to be expended only when the appropriate authorities (*i.e.,* the County Executive and County Council) had authorized their expenditure.

2.

Section 5-101 (c) (4) of the Education Article requires that the Howard County Board of Education, in preparing its annual budget, include a School Construction Fund in which the requested appropriations for various categories be designated by project. Appellant contends that its designation of the entire "Site Acquisition and School Construction Fund" as a single project was proper because it was done pursuant to a "memorandum of understanding" between the Board, the County Executive and the County Council. As the trial judge pointed out in his memorandum opinion, however, the requirements of the statutes cannot be avoided by custom or private understandings to the contrary. *State Department of Assessments & Taxation v. Computer Corp.,* 271 Md. 575, 320 A.2d 40 (1974); *Bouse v. Hutzler,* 180 Md. 682, 26 A.2d 767 (1947).

It seems clear that the Board's placement of certain site acquisitions and the Lisbon Elementary School site improvement into one project is inconsistent with Section 5-101 (c) (4) and the State Department of Education's Finance Reporting Manual which lists and defines site

acquisitions and school site improvements as separate categories. It appears reasonable on the basis of the practice adopted in the State Education budget that "by project" be determined to mean by individual school. To allow the Lisbon school site improvements to be mixed with four unrelated site acquisitions as one project would deny the County Council its statutory right to control the appropriation and expenditure of funds for individual capital improvements.

*Decree affirmed, costs to be paid by Board of Education of Howard County.*