516 A.2d 579

**Frank TURNER**

v.

**STATE of Maryland.**

**No. 35, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 7, 1986.

George E. Burns, Jr., and Jose F. Anderson, Asst. Public Defenders (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Richard Kastendieck, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief) Baltimore, for appellee.

Before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

In this case, we are asked to determine whether a court may revoke a defendant's probation on the ground that he failed to pay court costs.

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

We summarize the facts as follows. On January 5, 1983, appellant, Frank A. Turner, pleaded guilty to one count of robbery with a deadly weapon and was sentenced to five years supervised probation. As one of the conditions of Turner's probation, he was required to pay court costs of $135.00 by May 4, 1983. Between March 4, and August 16, 1983, Turner made payments totalling $75.00. Thereafter, he made no payments. He was charged with violating the terms of his probation and was tried in the Circuit Court for Baltimore City. The judge found Turner guilty, revoked his probation and reimposed the original sentence. The Court of Special Appeals affirmed in *Turner v. State,* 61 Md.App. 1, 484 A.2d 641 (1984). We granted Turner's petition for writ of certiorari.

Turner argues that Md.Code (1957, 1982 Repl.Vol.), Art. 38, § 4(c) clearly provides that no person shall suffer imprisonment for failing to pay court costs and that the trial judge erred in revoking his probation. He also contends that the trial judge's conclusion that Turner had the ability to pay the court costs was unsupported by the record and that the Court of Special Appeals' holding that the judge's finding was not clearly erroneous in this respect was incorrect.

The State, on the other hand, argues that Art. 38, § 4 does not preclude the reimposition of a conditionally suspended sentence when a probationer fails to comply with that condition. Rather, the State asserts, the section prevents only the imposition of a term in addition to the original term for failure to pay costs. The State also argues that the record shows that Turner was financially able to pay the costs.

## I

■ Article 38, § 1 authorizes the court upon finding a person guilty of a crime to sentence that person to the fine or penalty prescribed and further provides that the person "shall be liable for the costs of his prosecution; and in

default of payment of the *fine or penalty* he may be committed to jail in accordance with § 4 of this article until thence discharged by due course of law."

Section 4(c) provides:

Unless discharged by payment or service of imprisonment in default of a fine, a fine may be collected in the same manner as a judgment in a civil action. Costs may be collected in the same manner as a judgment in a civil action, but shall not be deemed part of the penalty, and *no person shall be imprisoned under this section in default of payment of costs.* [Emphasis supplied.]

The Court of Special Appeals analyzed these provisions, in responding to Turner's claim that revoking his probation for failure to pay costs violated the last sentence of § 4(c) of Article 38. We quote generously from the well-reasoned analysis stated for the intermediate appellate court by Judge Adkins:

Because we think there is a distinction between imposition of a suspended sentence of imprisonment upon violation of a condition of probation and imprisonment for non-payment of costs as a penalty for a crime, we reject [Turner's] argument. We explain.

Article 27, § 639(a) permits a court to "suspend sentence generally or for a definite time, and [to] make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper...." It has contained similar language as to costs ever since its initial enactment as Article 27 § 304A, by Ch. 402, Laws of 1894. *See Kelly v. State,* 151 Md. 87, 99, 133 A. 899 (1926).

Trial courts have invoked this authority and based suspension of sentence on the payment of costs, and have made payment of costs a condition of probation, *see, e.g., Shade v. State,* 18 Md.App. 407, 306 A.2d 560 (1973) and *Rites v. State,* 15 Md.App. 346, 290 A.2d 554 (1972). But we have found no reported Maryland appellate decision

that squarely addresses the question whether revocation of probation for violation of this condition violates the provisions of Article 38.

The portions of Article 38, §§ 1 and 4(c) (particularly the latter) that now concern us were first enacted by Ch. 147, Laws of 1970. That Act embodied numerous statutory changes adopted (as its title instructs us) for the purpose, *inter alia*, of "eliminating imprisonment for the non-payment of costs of criminal prosecutions[,] ... eliminating such costs as part of any penalty, [and] amending the law generally with regard to the payment of fines and commitment for non-payment thereof." As to fines, the Act (to some degree readopting prior law) set limits on the period of incarceration permitted for non-payment of a fine. More importantly, it required a court to inquire into a defendant's "financial and family situation and the reasons for nonpayment of the fine" before imprisoning him for non-payment. Articles 38, § 4(b). It was an apparent response to the decisions in *Kelly v. Schoonfield*, 285 F.Supp. 732 (D.Md.1968) and *Morris v. Schoonfield*, 301 F.Supp. 158 (D.Md.1969). The judgment in *Morris* was vacated for reconsideration in light of Ch. 147 and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Morris v. Schoonfield*, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970); *Arthur v. Schoonfield*, 315 F.Supp. 548, 551 (D.Md.1970).

*Kelly* and *Morris* both dealt with the constitutionality of pre–1970 provisions of Article 38 with respect to imprisonment for non-payment of fines and costs. *Morris* squarely held that where indigents are involved, "the State cannot constitutionally include costs in the time to be served under Art. 38, section 4." 301 F.Supp. at 161.

In *Arthur*, the United States District Court addressed the new Article 38 provisions adopted by Ch. 147. It concluded that

the new statute places certain clear limitations on sentencing courts in Maryland, in order to avoid serious constitutional problems and to meet present-day stan-

dards. One such limitation prevents imprisonment for non-payment of costs. [footnote omitted].

315 F.Supp. at 552. What the *Arthur* court condemned, as violative both of new Art. 38, § 4 and of constitutional protections, was a practice of the former Municipal Court of Baltimore City. Under that practice, defendants sentenced to imprisonment were not assessed with court costs. Defendants sentenced only to fines were. The sentences were suspended upon condition of immediate payment of fines and costs, but those defendants who were unable to make contemporaneous payment were then committed for failure to pay, without any inquiry as to financial ability.

So far as court costs are concerned, the 1970 provisions of § 4(c) eliminated that problem. Costs are no longer a part of the penalty and no one may be sentenced to prison for failure to pay them. But the language of § 4(c) does not necessarily manifest a legislative intention to prohibit revocation of probation when costs are made a condition of probation and are not paid. In construing the statute in that context, we must seek out the true legislative intent, reading the law "without forced or subtle interpretations designed to extend or limit the scope of its operation." *Sites v. State,* 300 Md. 702, 710, 481 A.2d 192 (1984).

Given the circumstances under which present §§ 1 and 4(c) were enacted, as well as the plain language of the new provisions, it is clear that they contain no limitation on requiring payment of court costs as a condition of probation. The statutory wording contains no explicit proscription to that effect. To imply such a proscription, moreover, would be inconsistent with the rule that statutes *in pari materia* are to be construed harmoniously if that is possible, giving effect to the provisions of each. *Board of Education of Howard County v. Howard County, Maryland,* 45 Md.App. 358, 370, 413 A.2d 568 (1980). Article 27, § 639, as we have seen, expressly permits payment of costs as a condition of probation.

When the Article 38 provisions were modified in 1970, a number of other laws were also amended, but not Article 27, § 639. Both the Article 38 sections and § 639 were amended in the same Act in 1972—Ch. 181 of the Laws of that year—but the "costs" provision of § 639 was untouched. Furthermore, that provision has been reenacted without change on numerous occasions, most recently by Ch. 98, Laws of 1982. All of this, it seems to us, manifests a legislative intention that the use of payment of costs as a condition of probation is not inconsistent with the Article 38 prohibition against imprisonment for nonpayment of costs that are not part of the penalty for a crime. *See Applestein v. Osborne,* 156 Md. 40, 143 A. 666 (1928) and *Prince George's County v. Laurel,* 51 Md. 457 (1879).

It is one thing for the legislature to say that costs are not part of the criminal penalty and that one may not be imprisoned because of their non-payment. It is quite another to say that when payment of costs are made a condition of probation, probation may not be revoked and the original punishment reimposed. Probation is an act of grace. *Kaylor v. State,* 285 Md. 66, 75, 400 A.2d 419 (1979). It permits a court, in its discretion, to suspend what would be the normal penalty for violation of the criminal law in favor of conditions which, if performed, tend to promote the rehabilitation of the criminal as well as the welfare of society. *Scott v. State,* 238 Md. 265, 275, 208 A.2d 575 (1965). In other words, in an appropriate case, the criminal defendant is given a second chance—an opportunity to show that by performing the conditions of probation he can function as a law-abiding and useful member of society. If he faithfully performs those conditions, he is spared the more drastic punishment that generally follows a violation of the criminal law.

If, however, the defendant fails to perform the conditions of probation he may forfeit the benefits of probation. In such a case, when the original sentence or some

portion of it is reimposed, the "original sentence is the only true punishment; the probation revocation is merely the withdrawal of favorable treatment previously afforded the defendant." *Clipper v. State,* 295 Md. 303, 313, 455 A.2d 973 (1983). Thus, he is not imprisoned because court costs have been imposed as part of the criminal penalty; he is imprisoned because of reimposition of the original sentence, a result he has brought upon himself by failure to obey the conditions of probation. He is not imprisoned "under this section [Article 38, § 4] in default of payment of costs;" he is imprisoned for violation of a condition of probation established under the authority of Article 27, § 639. Nor does the collection of costs via a probation condition violate the Article 38 provisions that "unpaid costs ... *may* be levied and executed as for a judgment in a civil case" (§ 1) or that "[c]osts *may* be collected in the same manner as a judgment in a civil action" (§ 4(c)) [emphasis supplied]. As use of the word "may" demonstrates these provisions are neither exclusive nor mandatory.

Courts costs, therefore, may be imposed as a condition of probation. We hold that Article 38, §§ 1 and 4(c) are not involved when, because of breach of that condition, an original sentence of imprisonment is reimposed.

61 Md.App. at 5–10, 484 A.2d at 643–45 (footnotes omitted).

We agree with the intermediate appellate court up to this point; however, we think the Court of Special Appeals was wrong when it held that the trial judge's finding that Turner had the ability to pay the costs was not clearly erroneous. We explain.

II

In *Humphrey v. State,* 290 Md. 164, 428 A.2d 440 (1981), Judge Davidson noted for the Court the principles which a trial judge must follow in determining whether to revoke a defendant's probation for his failure to abide by a condition thereof.

A probationer is entitled to retain his liberty as long as he substantially abides by the conditions of his probation. Probation may not be revoked unless the probationer has in fact acted in violation of one or more conditions of his probation. . . .

Generally, before probation may be revoked the State must prove that the probationer has not complied with one or more lawful conditions of probation. *Even then, ordinarily probation may not be revoked if the probationer proves that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own. . . .* Of course, if the probationer fails to carry this burden, the question whether to revoke probation is a matter within the discretion of the trial court. . . . The trial court's determination to revoke probation is reviewable by an appellate court "for the purpose of determining whether that discretion has been abused in any way or whether an erroneous construction has been placed by the trial judge on the conditions of the [probation]." *Swan* [*v. State,* 200 Md. 420, 425, 90 A.2d 690, 692 (1952).]

290 Md. at 167–68, 428 A.2d at 443 (emphasis supplied, citations omitted). In *Humphrey,* the defendant's probation was revoked and his original sentence reimposed because he failed to receive drug treatment. We held that the trial judge was in error in reinstating the defendant's sentence because the defendant

repeatedly tried to comply with the special condition [that he receive drug treatment], engaged in no act of misconduct affecting others during the probationary period, and was prevented from complying with the special condition because of factors beyond his control[. Thus,] the record does not support a finding that the probationer acted in violation of the special condition of his probation.

As in *Humphrey,* we believe that Turner has met his burden to show that the circumstances causing his inability to satisfy the condition of probation were beyond his control. In this instance, it was Turner's indigency which was

the cause of his inability to pay. The Supreme Court has set forth numerous times that a defendant may not be imprisoned solely for failure to pay a fine where his failure to pay arose from his indigency. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

The Court in *Bearden* specifically held that

in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* 461 U.S. at 672–73, 103 S.Ct. at 2073, 76 L.Ed.2d at 233 (footnote omitted).

In the case *sub judice*, the State showed only that Turner paid $75.00 of the $135.00 he was required to pay. Debra Williams, Turner's probation officer and the State's sole witness at the probation hearing, was asked on cross-examination by defense counsel whether Turner had been working during the period when he was placed on probation. Her response and the resulting colloquy was as follows:

[Williams]: One time. A very short period. He worked with an uncle. The aunt told me. During the initial interview, I went out to the home and the grandmother told me he was working. However, when he came into the office he said he was unemployed.

[Mr. Raglin, Counsel for Turner]: Have you made any referrals to Man-Power for Mr. Turner or any of the other agencies?

A. One of my strongest points, sir, is resource finding and my clients can always come to me, you know, for different resources. In fact, Man-Power is right across the office in which I work.

Q. Are you familiar with Mr. Turner's financial situation?

A. No, I am not.

Q. You don't know whether he has the ability to pay the money or not.

A. The court ordered him to pay the money, sir.

Q. Do you know if he has the ability to pay or not?

A. Sir, no, I don't. I can't truthfully honestly say that.

On the other hand, Turner testified that he was an 18–year old man with a seventh grade education, and in response to counsel's question as to whether he had been working, he replied that he had not, but that he had "been off and doing odd jobs with [his] father." The following colloquy then occurred:

[Counsel for Turner]: You do odd jobs with your father?

[Turner]: Yes.

Q. Your father had any work recently?

A. No.

Q. Now, what were you planning to do about the $60 balance that is outstanding?

A. Huh?

Q. Were you planning on paying it?

A. I was waiting till he get some work for me.

Q. Have you yourself a time frame when you were going to have the money paid off?

A. By Friday.

Q. You were going to have it paid off by Friday?

A. Yes.

\* \* \* \* \* \*

Q. And you are willing to have the money paid by Friday. Is that correct?

A. Yes.

MR. RAGLIN: No further questions, Your Honor.

### CROSS–EXAMINATION

[By Ms. Finch, State's Attorney]: How are you going to pay this by Friday?

A. My mother is going to pay it.

Q. I see, and this last year when you were working for your father—

A. When he had jobs.

Q. Did you ever make any attempt to try and get your probation officer here to help you—

A. The $75 she have so far.

Q. I understand, did you tell her you needed a new job?

A. Yeah, we talked about that. She asked me and I talked.

Q. Did you ever go to Man-Power?

A. Yes.

Q. You did?

A. Yes.

Q. What happened when you went to Man-Power?

A. I on the waiting list.

Q. You were making $40 a week in June?

A. I say if he had work for me I'd have made $40 a week working all week.

Q. When did you work for him?

A. Whenever he had—during the summer, April, May and June.

Q. Did you work in July?

A. No.

Q. Did you work in August?

A. No.

Q. How is it you were able to pay some of the money in July and August?

A. Because I have ways of getting money. That ain't the only way I can get money.

Q. What were your other ways of getting money?

A. My family.

Q. Your family gave you money?

A. Yeah.

Q. Why didn't they give you the money at this time?

A. They didn't have it.

MS. FINCH: I have no further questions.

## REDIRECT EXAMINATION

BY MR. RAGLIN:

Q. You state you are on a waiting list at Man-Power?

A. Yes.

Q. How long have you been on the waiting list?

A. Since I came on, since April.

Q. Since April?

A. of '83.

Q. Where else have you checked for employment?

A. Calvert Education—For employment?

Q. Uh-huh.

A. Maryland Avenue. They don't have no opening but I put in applications.

Q. You've been putting in applications on a regular basis?

A. Yes.

Q. You mentioned Calvert Education. Have you inquired about getting back into Calvert Education?

A. I can't get in there now. They don't have any openings for the G.E.D. program.

Q. It is your testimony you just don't have the funds to pay this off at this time. Is that correct?

A. Right.

Q. But you would get the money from your father?

A. Yes.

We believe that this evidence was sufficient to show that Turner failed to pay the costs because of his indigency and that he made bona fide efforts to find a job. The State offered absolutely no evidence to the contrary. Indeed, the State's own witness said that she knew nothing of Turner's financial situation.

On this record, then, we find that the trial judge's conclusion was clearly erroneous in finding that Turner had the ability to pay, and he abused his discretion when he revoked Turner's probation.

Accordingly, we reverse.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.

ELDRIDGE and COUCH, Judges, concurring:

We concur in the result and in Part II of the Court's opinion.