Dear Sheriff Richard J. Voorhaar
In your capacity as warden of the St. Mary's County Detention Facility, you have requested our opinion as to the constitutionality of continued commitment of an inmate who has completed the specified period of incarceration but failed to pay a fine, when the sentence appears to make payment of the fine a condition of the inmate's release from custody.
State law provides that a court may sentence a convicted defendant who has failed to pay a fine to an additional period of confinement to "work off" the fine. However, under both State law and the federal Constitution, the court must first assess the defendant's ability to pay the fine by inquiring into the defendant's family and financial situation. Any additional period of incarceration imposed for failure to pay the fine must be within statutory limits and may not, in any event, exceed 90 days. Finally, the total period of incarceration imposed on an indigent defendant may not exceed the statutory maximum for the underlying offense.
If, in a particular case, you are concerned that a sentence may not comply with these statutory and constitutional parameters, we recommend that you write the court, with copies to the prosecutor and defense attorney, setting forth the basis for your concern and await further direction from the court.
 I Incarceration in Lieu of Payment of Fine
Under Maryland law, if a defendant in a criminal case fails to pay a fine that is part of the defendant's sentence, the court may require the defendant to serve a period of incarceration in lieu of payment of the fine. However, the federal Constitution, as well as a State statute, set procedural and substantive limits on this option.
A. Constitutional Limits
The federal Constitution prohibits a state from imposing a fine as part of a criminal sentence and then automatically converting the fine into a jail term, when the defendant's failure to pay the fine is attributable solely to indigency. The Supreme Court established this principle in a series of decisions, beginning 30 years ago.
In Williams v. Illinois, 399 U.S. 235 (1970),[1] the Supreme Court held that the continued incarceration of a defendant for nonpayment of a fine violates the Equal Protection Clause of the United States Constitution if the aggregate period of incarceration exceeds the statutory maximum for the underlying offense and the defendant's failure to pay the fine is involuntary. In that case, a defendant convicted of petty theft received the maximum sentence under Illinois law for that offense: one year imprisonment, a $500 fine, and $5 in court costs. In accordance with an Illinois statute, the judgment also directed that, if the defendant failed to pay the fine or costs, he was to "work off" the unpaid amount through continued incarceration at the rate of $5 per day. Thus, the sentence would have required the defendant to serve 101 days beyond the statutory maximum if he failed to pay the fine and court costs.
The defendant challenged the sentence, alleging that he was indigent and unable to satisfy the monetary portion of the sentence. The Supreme Court observed that the custom of imprisoning a convicted defendant for nonpayment of a fine was of ancient origin. 399 U.S. at 239-40. However, the Court found that the Illinois statute worked an "invidious discrimination" against an indigent defendant, as only a convicted person with access to funds could avoid the increased punishment. In effect, the state had established different maximum periods of incarceration based on a defendant's ability to pay. Id. at 242. The Court held that the Equal Protection Clause requires that the statutory ceiling on imprisonment for any substantive offense be the same for all defendants irrespective of economic status. Id. at 244. Accordingly, the Court concluded that "an indigent criminal defendant may not be imprisoned in default of payment of a fine beyond the maximum authorized by the statute regulating the substantive offense." Id. at 241.
The holding in Williams would literally apply only in a case in which the aggregate period of incarceration exceeds the statutory maximum. However, one year later, the Court extended the principle announced in Williams, to forbid the automatic conversion of an unpaid fine to incarceration, regardless of whether the fine was originally accompanied by a jail term or whether the aggregate jail term exceeded the statutory maximum. In Tate v. Short, 401 U.S. 395 (1971), the Court considered a case in which an indigent defendant, who had failed to pay fines for non-jailable traffic offenses, was imprisoned under a Texas statute that provided for incarceration in lieu of an unpaid fine at the rate of $5 per day. The Court concluded that the Texas statute suffered from the same constitutional defect as the Illinois statute in Williams. It held that "the Constitution prohibits the State from imposing a fine and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." 401 U.S. at 671.
Subsequently, in Bearden v. Georgia, 461 U.S. 660 (1983), the Court reiterated the holdings in Williams and Tate, but analyzed the issue of incarceration in lieu of payment from the perspective of the Due Process Clause of the federal Constitution. In Bearden, an indigent defendant on probation had partially paid a fine that was a condition of his probation but, after being laid off from his job, was without income or assets to pay the remainder of the fine on time. A Georgia state court revoked the defendant's probation and sentenced him to serve the remainder of his term of probation in prison. The Supreme Court held that a court could not revoke a defendant's probation for failure to pay a fine, without first finding that the defendant was responsible for that failure or that alternative forms of punishment would be inadequate to meet the state's interest in punishment and deterrence. The Court stated:
 [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.
461 U.S. at 672-73.
Based on the principles outlined in the Supreme Court's decisions, the Court of Appeals of Maryland has overturned or reduced prison sentences imposed on indigent defendants for failure to pay restitution or court costs. Reddick v. State, 327 Md. 270, 608 A.2d 1246 (1992) (sentencing judge's offer to reduce sentence by five years if defendant paid restitution to victim's family was unconstitutional, since it subjected indigent defendant to imprisonment for lack of resources); Smith v. State, 306 Md. 1, 506 A.2d 1165 (1986) (sentencing court violated due process when it revoked defendant's probation for failure to pay restitution without making sufficient inquiry into defendant's ability to pay); Turner v. State, 307 Md. 618, 516 A.2d 579 (1986) (court abused discretion in revoking probation of indigent defendant for failure to pay court costs).
Thus, the Constitution places both procedural and substantive limitations on a court's power to incarcerate a criminal defendant in lieu of payment of a fine. First, the court must inquire into the reason why the defendant has failed to pay the fine. If the failure to pay is attributable to indigency the court must also consider alternate methods of punishment. If the court ultimately decides that an additional period of incarceration is necessary to serve the interests of deterrence and punishment, the aggregate period of incarceration cannot exceed the maximum sentence for the underlying offense.
B. Statutory Parameters
A Maryland statute incorporates the constitutional principles and sets some additional limits on the period of incarceration that may be imposed in default of payment of a fine.
1. Article 38
Under Annotated Code of Maryland, Article 38, § 1, a defendant who fails to pay a criminal fine "may be committed to jail in accordance with § 4 of this article until thence discharged by due course of law."
Section 4 provides that a court may order a defendant to pay a fine in its entirety at the time sentence is imposed, in specified installments over a period of time, or as a condition of probation. Article 38, 4(a). If a defendant fails to pay the fine, the court is first to determine the reason for nonpayment. The statute provides:
 If the defendant fails to pay the fine as directed . . . or if he is unable to pay the fine and so represents upon application to the court, the court, after inquiring into or making such further investigation, if any, which it may deem necessary with regard to the defendant's financial and family situation and the reasons for nonpayment of the fine, including whether such nonpayment was contumacious or was due to indigency, [may enter an appropriate order].
Article 38, § 4(b). The statute provides several options, depending on the results of this inquiry: modification of the sentence to any fine that the court could have imposed initially — for example, payment in installments or as a condition of probation; reduction of the fine to an amount that the defendant is able to pay; or imprisonment until the fine — or a specified portion of it — is paid. Article 38, 4(b).[2]
If the court elects to incarcerate the defendant for nonpayment, that decision is subject to certain limitations. First, the court must determine a specific period of incarceration that takes into account "the defendant's situation and means and . . . his conduct with regard to nonpayment of the fine. . . ." Article 38, § 4(b). Second, the statute sets several limitations on the period of incarceration:
 (1) The period of incarceration may not exceed one day for each $10 of the unpaid fine.
 (2) The period of incarceration imposed for nonpayment of the fine may not exceed one-third of the maximum period of imprisonment provided by statute for the offense.
(3) The period of incarceration may not exceed 90 days.
 (4) If imprisonment is not otherwise authorized as part of a sentence for the particular offense, the period of incarceration may not exceed 15 days.
 (5) If the defendant served a period of incarceration for the same offense for which the fine was imposed, the aggregate of the original sentence of incarceration and the term imposed for nonpayment of the fine may not exceed the maximum period of imprisonment authorized for the particular offense.
Article 38, § 4(b)(1)-(4). Service of a period of incarceration for nonpayment of a fine relieves the defendant of any further payment obligation. Article 38, § 4(c) (State may collect criminal fine in same manner as civil judgment, unless "discharged by . . . service of imprisonment in default of a fine").
2. Legislative History of § 4
The current version of Article 38, § 4 was designed, in part, to satisfy the constitutional concerns outlined above. Prior to 1970, the statute contained a formula for working off an unpaid fine through service of a term of imprisonment: one day for every two dollars of unpaid fine and costs.[3] The statute also set staggered maximum limits on the term: 30 days for a fine of $100 or less; 60 days for fines between $100 and $500; and 90 days for fines exceeding $500. Article 38, § 4 (1965 Repl. Vol., 1969 Supp.). However, the statute did not call for any inquiry into the defendant's financial situation and it was conceivable, under the statutory formula, that an indigent defendant could be imprisoned in excess of the statutory maximum for the underlying offense.
In two decisions that presaged to some extent the later Supreme Court decisions, the federal district court in Maryland held specific applications of the statute unconstitutional. In Morris v. Schoonfield,301 F. Supp. 158 (D.Md. 1969), vacated, 399 U.S. 508 (1970),[4] a three-judge federal district court observed that the statute had a dual purpose: (1) to provide a substitute punishment for the crime; and (2) to coerce a recalcitrant defendant who was able to pay a fine. The court held that the statute could not constitutionally be applied to an indigent defendant, unless the defendant was given an opportunity to present his financial circumstances to the judge, so that the judge could take those circumstances into account, perhaps by reducing the fine or allowing it to be paid in installments. "The commitment or other record should show that the decision was made deliberately by the judge after hearing from the defendant, either before or after sentence on the question of his ability to pay the fine." Id. In Kelly v. Schoonfield,285 F. Supp. 732 (D.Md. 1968), the same three-judge court held unconstitutional a requirement that a criminal defendant serve a period of incarceration in default of the payment of court costs.
In response to the Morris and Kelly decisions, the General Assembly in 1970 revised § 4 to essentially its current terms. Chapter 147, Laws of Maryland 1970. See Arthur v. Schoonfield, 315 F. Supp. 548, 551
(D.Md. 1970) (noting that 1970 legislation was "carefully drawn" to meet constitutional standards set forth in Morris and Kelly); Turner v. State, 307 Md. 618, 516 A.2d 579 (1986) (summarizing history of 1970 amendments).
3. Summary
Under Article 38, § 4(b), a court cannot extend the period of incarceration for a defendant who fails to pay a fine without first inquiring into the reasons, if any, why the defendant has failed to pay the fine.[5] If the court then elects to impose additional incarceration in lieu of payment, the period of incarceration may not be indefinite. Rather, the statute sets very specific limits on any such period of imprisonment. At the most, such a period cannot exceed 90 days (or 15 days if the offense does not ordinarily involve the possibility of imprisonment).[6]
To illustrate your request for this opinion, you attached a copy of a commitment record with identifying information redacted. That commitment record stated that the defendant, who apparently had been convicted of a drug offense, was to serve 90 days incarceration and "Defendant to pay a fine in the amount of $5,000 before released from confinement." We cannot express an opinion whether the sentence recorded in this commitment record complies with Article 38, § 4, because the document is open to several interpretations, at least two of which would be lawful.[7]
On its face, this document appears to require that the defendant be incarcerated for 90 days and pay a fine during that period. It does not itself appear to authorize incarceration in lieu of payment of the fine. Of course, if the defendant failed to pay the fine and, after inquiry, the court determined that the defendant should serve additional time in custody for the default, the court could sentence the defendant to an additional period, subject to the limits in Article 38, § 4(b).
It is also conceivable that this commitment record documents the court's decision to impose incarceration in lieu of payment of the $5,000 fine after a proceeding under Article 38, § 4(b). The commitment record involves a sentence of 90 days — the maximum permitted by § 4(b) — and could be construed to direct the release of the defendant during that period on payment of the fine — also consistent with § 4(b).
If you have a question, based on a particular commitment record, about whether a sentence exceeds the parameters set by the Constitution or Article 38, § 4, you should write the sentencing court outlining your concern, with copies to the prosecutor and defense attorney. You should then await further direction from the court as to when and under what circumstances to release the defendant.
 II Conclusion
In our opinion, a court may sentence a convicted defendant who has failed to pay a previously-imposed fine to an additional period of confinement to "work off" the fine. However, in accordance with Article 38, § 4 and the federal Constitution, the court must first inquire into the defendant's family and financial situation to assess the defendant's ability to pay the fine. Any additional period of incarceration must be within statutory limits and can, in no event, exceed 90 days. Finally, the total period of incarceration imposed on an indigent defendant may not exceed the statutory maximum for the underlying offense. If, in a particular case, you are concerned that a sentence may exceed the statutory and constitutional parameters, we recommend that you advise the court, as well as the prosecutor and defense attorney, of the basis for your concern and await further direction from the court.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] Williams was combined for argument with a case challenging the Maryland statute that then governed incarceration for nonpayment of a fine. The Court ultimately vacated the Maryland case in light of its decision in Williams, and the passage by the General Assembly of legislation establishing procedural and substantive limits on the imposition of jail time in default of payment of a fine. See Morris v. Schoonfield, 399 U.S. 508 (1970). The revised Maryland statute is discussed in Part I.B of this opinion.
[2] A defendant may not be imprisoned for failure to pay court costs imposed in a criminal case. Article 38, § 4(c).
[3] Until 1968, the formula was one day for each dollar of unpaid fine. See Chapter 143, Laws of Maryland 1968.
[4] The judgment in Morris was vacated by the Supreme Court in light of its contemporaneous decision in Williams v. Illinois, and in light of the General Assembly's 1970 amendment to Article 38, § 4. See footnote 1 above and accompanying text.
[5] This requirement resembles the inquiry that would be undertaken if the State pursued civil proceedings to collect the fine, as authorized by another part of the statute. Under Article 38, § 4(c), an unpaid fine may be collected in the same manner as a judgment in a civil action. A defendant who fails to pay a monetary judgment can be charged with constructive civil contempt and face the prospect of imprisonment to coerce compliance with the judgment. Maryland Rules 15-706; 15-707. However, prior to imprisoning a defendant for civil contempt, the court must allow the defendant an opportunity to show that "he has neither the estate nor the ability to pay his obligation." Rawlings v. Rawlings,362 Md. 535, 567, 766 A.2d 98 (2001) (quoting Jones v. State, 351 Md. 264,276, 718 A.2d 222 (1998)).
[6] Of course, under Williams and Tate, a period of incarceration could not be constitutionally imposed against an indigent defendant for a non-jailable offense.
[7] If the sentencing court actually imposed a lawful sentence, the sentence is to be carried out even if the commitment record could be read to impose an unlawful one — e.g., indefinite incarceration in lieu of payment of a fine. See Maryland Rule 4-351.
 *Page 193