935 F.2d 1288
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Claude M. BOYD, Jr., Defendant-Appellant.
 No. 90-5329.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided June 19, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Chief District Judge. (CR-84-13)
 William Robert Shell, Wilmington, N.C., for appellant.
 John Stuart Bruce, First Assistant United States Attorney, Raleigh, N.C. (argued), for appellee; Margaret Person Currin, United States Attorney, Raleigh, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before SPROUSE and WILKINS, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Claude Boyd ("Boyd") was convicted on arson, fraud and related charges arising from the deliberate destruction of his grocery store. He was sentenced to ten years imprisonment and five years probation conditioned on his payment of fines and restitution within a specified time. The district court revoked Boyd's probation, finding that he willfully dissipated his assets to avoid payment of the fines and restitution, willfully failed to furnish information to the probation office in a timely manner and, in the alternative, misled the court with false information about his assets. We affirm.
 
 I.
 
 2
 Since the district court revoked Boyd's probation for failure to satisfy the conditions of probation by dissipating his assets and failing to furnish financial information in a timely fashion, analysis of whether revocation of probation was erroneous necessitates a detailed scrutiny of the antecedent facts. Prior to the events discussed herein, Boyd held title to over 215 acres of farm property and lots in Horry County, South Carolina ("South Carolina farm property"). He and his wife Virginia also owned a home located near Tabor City, North Carolina ("Tabor City property") and two lots with houses in Surfside Beach, South Carolina ("Surfside Beach property"). Boyd also owned and operated a Piggly-Wiggly grocery store in Tabor City. On January 6, 1982, the store was destroyed by an explosion and fire that later formed the basis of arson, fraud and other related charges against Boyd for which he was indicted and convicted.
 
 
 3
 On February 26, 1982, some six weeks after the fire, Boyd conveyed all his interest in the South Carolina farm property to his daughter Claudia Celeste Boyd ("Celeste") for $10,000. Boyd was indicted in June 1984 and at his post-indictment arraignment, the district judge advised him that he was subject to fines and restitution orders if convicted.
 
 
 4
 On August 28, 1984, eleven weeks prior to trial, Boyd and Celeste conveyed a deed for the timber on the South Carolina farm property to Georgia Pacific Corporation for $296,000. These funds were used to pay mortgages on the farm property, a bank loan, Boyd's attorney fees, a broker's fee, a personal debt and payment for the sale of timber from adjoining property owned by Ronnie Dyer and Virginia Boyd ("Virginia"). The residue was given to Virginia for living expenses. A deed conveying two tracts of the South Carolina farm property from Boyd to Celeste without consideration or explanation was also recorded on that day.
 
 
 5
 On November 12, 1984, one day before Boyd's trial began, Celeste executed a deed prepared by defense counsel, conveying to Boyd and his wife Virginia a life estate in the South Carolina farm property. The deed was subsequently recorded on November 19, 1984.
 
 
 6
 At trial, Boyd's defense included claims that in light of his wealth he had no motive to commit arson. He testified that he owned "a hundred percent of [the South Carolina farm property] now" and had clear title to it at that time. He also furnished evidence of his ownership of properties in Tabor City and Surfside Beach, valued at $332,500 as of March 15, 1982. Boyd later (allegedly on December 20, 1984, sixty-one days before sentencing) deeded his interest in two tracts constituting the Surfside Beach property as well as his interest in the Tabor City home to his son, Michael Boyd. These deeds were not recorded until March 12, 1985.
 
 
 7
 On December 28, 1984, Boyd was convicted on all counts. Three days later, in preparation for sentencing, Boyd informed probation officer Jack Koonce of his joint ownership in the Tabor City and Surfside Beach properties (but which by then had presumably been conveyed to Michael by unrecorded deeds). On January 3, 1985, forty-seven days prior to sentencing, Boyd and Virginia executed a deed, recorded the following day, conveying back to Celeste their interest in the South Carolina farm property so as to, according to Boyd, allow Celeste to post the bond which he was unable to post as long as he held interest in the land. On January 29, 1985, Boyd's attorney submitted a financial statement to the court indicating Boyd had assets of $417,500 and a net worth of over $307,000. It also stated that Boyd and his wife owned the Tabor City and Surfside Beach properties. However, a probation office presentence report prepared on February 11, 1985, reflecting the financial information, indicated that Boyd was considered to have a net worth of "well in excess of $1,000,000." The probation office was of the opinion that the South Carolina farm property remained in Boyd's possession in light of his control over it.
 
 
 8
 On February 18, 1985, Boyd gave his wife a general power of attorney, allowing her to sell or spend his assets. The following day, Boyd was sentenced to ten years with eligibility for parole in two years and five years probation. He was also fined a total of $47,000. Probation was conditioned on his paying all fines within twelve months of the date of judgment and restitution totalling $366,866.55 "prior to the term of probation ... or, in the alternative, 20% of the aggregate amount per year during the term of probation...." The restitution, which was both part of the sentence and a condition of probation, was to be paid to insurance companies, the United States and North Carolina governments as well as the property owner and an investment corporation. The court however, told Boyd that if he could present evidence of payment of part of the restitution in a post-sentence motion, probation would cease to be conditioned on its payment.
 
 
 9
 Boyd appealed his conviction (but not the imposition of fines or restitution), and was ordered not to dissipate his assets during pendency of the appeal. His conviction was affirmed by this court on August 20, 1986. While in prison, Boyd was uncooperative in providing financial information to the government. Moreover, due to alleged health reasons, he did not participate in the Bureau of Prisons' Financial Responsibility Program designed to assist inmates in planning the satisfaction of their financial obligations. By June 21, 1988, Boyd had not made any payments toward the fines and restitution and had indicated to his case manager that he planned to challenge their imposition in court and had not made any plans to satisfy these obligations upon release. Boyd, however, subsequently began making payments of $100 each month.
 
 
 10
 On April 18, 1986, Celeste and Virginia arranged a $100,000 line of credit with Southern National Bank and mortgaged the farm property as security. As a condition to obtaining the loan, Celeste was required to pay off an outstanding $15,000 loan made to Boyd and Virginia out of the proceeds. The rest of the money went to pay taxes on the South Carolina farm property as well as providing for Virginia's living expenses. On April 18, 1988, Celeste borrowed $40,000 from a South Carolina businessman. In giving a second mortgage as security, Celeste was required to include in the mortgage a $10,000 outstanding debt owed by Boyd and Virginia. While Boyd was in prison, his wife sold all but five of his 200 shares of stock in Southern National Bank.
 
 
 11
 Boyd was released on September 27, 1988. For over one year he failed to respond to interrogatories in aid of execution submitted by the probation office. Boyd also failed to respond to a final notice of balance due, setting forth his reason for delay of payment of fines and restitution. During this period, while Boyd claimed he had no bank account, his wife Virginia refused to sign a release to allow the probation office to examine her bank account records.
 
 
 12
 On February 9, 1990, the probation office moved for revocation of Boyd's probation and the government filed a memorandum in support. Prior to the conclusion of the revocation hearing, the district judge ordered Boyd into custody, finding him in violation of the conditions of probation. Specifically, in its written order of April 3, 1990, the court found he had dissipated his assets to avoid payment of fines and restitution, that he had willfully failed to furnish financial information to the probation office and, in the alternative, that he had given false and misleading financial information to the court upon which it relied to impose the probation.
 
 
 13
 In its subsequent June 13, 1990 order directing revocation, the district court again emphasized that Boyd willfully and fraudulently dissipated and attempted to dissipate his assets in order to avoid payment of the fines and restitution and that Boyd willfully refused to pay any significant portion of the fines and restitution. The court found incredible the testimony of Boyd, Virginia and Celeste that the conveyances of the South Carolina farm property were unconditional. Moreover, it disbelieved Virginia's testimony that she never discussed finances with Boyd while he was in prison. The court also found alternatively that Boyd had the transfers to his son Michael backdated after sentencing and thus owned the property at the time of sentencing.
 
 
 14
 On appeal, Boyd challenges the district court's order of revocation, in particular, its finding that he dissipated his assets to avoid payment of fines and restitution, that he willfully failed to furnish financial information to the probation office, and that he provided false information to the court.
 
 II.
 
 15
 On appeal, Boyd first contends that the trial court erred in imposing a fine and restitution requirement as a condition of probation by failing to inquire into his financial circumstances and ability to pay the fine and make restitution pursuant to 18 U.S.C. Secs. 3572(a) and 3580.[1] He argues that, had the district court conducted a proper inquiry, several of Boyd's property transactions would have been revealed. It is true that this circuit requires district courts to make specific findings with respect to the Secs. 3580(a) and 3572 factors. See United States v. Sharp, 927 F.2d 170, 174 (4th Cir.1991); United States v. Harvey, 885 F.2d 181, 182-83 (4th Cir.1989); United States v. Bruchey, 810 F.2d 456, 458 (4th Cir.1987). However, unlike those cases which appealed the restitution order prior to revocation, Boyd's challenge comes too late.
 
 
 16
 In his brief and in oral argument, Boyd's counsel stressed that by imposing fines and the requirement for restitution, the court virtually insured that Boyd would violate his probation conditions. While Boyd now takes issue with the district court's procedures, he had every opportunity to challenge the imposition. Failing to take timely action, Boyd waived his right to now make this challenge. See United States v. Irvin, 820 F.2d 110, 111 (5th Cir.1987). In Irvin, the Fifth Circuit found a post-revocation challenge to the validity of the restitution provision waived, since it had not been challenged at the time of sentencing or by way of direct appeal nor by use of Federal Rule of Criminal Procedure 35 which permits correction at any time of an "illegal sentence." See also United States v. Stine, 646 F.2d 839, 844-45, 847 (3d Cir.1981); United States v. Weber, 437 F.2d 1218, 1220 (7th Cir.1971), cert. denied, 402 U.S. 1008 (1973).
 
 
 17
 Nor do we find United States v. Taylor, 321 F.2d 339 (4th Cir.1963), to the contrary. In Taylor, this court rejected the argument that defendant, having accepted probation, waived his right to contest the imposition of the restitution requirement after his probation was revoked. However, unlike Boyd in the case sub judice, Taylor was not relying on his inability to pay restitution when sentenced but rather upon his "impecunious state in 1963 when defaulting." Taylor, 321 F.2d at 341; see also United States v. Boswell, 605 F.2d 171, 174 (5th Cir.1979).
 
 
 18
 Finally, we find no error in the district court's decision to revoke probation. It is well settled that the decision to revoke probation is entrusted to the sound discretion of the district court, and it is only upon a clear showing of abuse of that discretion that the court's decision will be reversed. See United States v. Babich, 785 F.2d 415, 418 (3d Cir.), cert. denied, 479 U.S. 833 (1986); United States v. Rice, 671 F.2d 455, 457-58 (11th Cir.1982). The standard of proof is that the evidence be such that a judge be reasonably satisfied that the conduct has not been in conformity with the conditions of probation. See United States v. Verbeke, 853 F.2d 537, 539 (7th Cir.1988). Because the facts support the conclusion that there had been a violation of the conditions of probation, we conclude that revocation was well within the district court's discretion.
 
 
 19
 A defendant's failure to pay a fine or to make restitution is not grounds for revocation of probation if the default results from a condition beyond his control such as poverty. See Bearden v. Georgia, 461 U.S. 660, 668-69 (1983); nited States v. Taylor, 321 F.2d 339, 341 (4th Cir.1963). See also United States v. Irvin, 820 F.2d 110, 111 (5th Cir.1987). However, as the Supreme Court held in Bearden, "[i]f the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection...." But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically...." Bearden, 461 U.S. at 668-69.
 
 
 20
 The facts here indicate that Boyd placed himself in a position whereby he would be unable to pay the fine and restitution by dissipating his assets. While Boyd testified that the transfers to his children were for the purpose of dividing his property equally between them, we cannot disagree with the district court's finding that the assets were consistently used for Boyd's benefit, including the support of his wife while he was in prison. Also significant is the fact that over 97 percent of Boyd's Southern National Bank shares, the only asset other than $500 cash which Boyd listed in his pre-sentence financial statement as not being jointly owned by him and Virginia, were also sold by Virginia pursuant to a general power of attorney he granted her one day prior to sentencing.
 
 
 21
 Moreover, willful failure to furnish information to the probation office may also justify revocation of probation, United States v. Babich, 785 F.2d 415, 418 (3d Cir.1986); Higdon v. United States, 627 F.2d 893, 900 (9th Cir.1980), and the record supports the district court's finding that Boyd willfully failed to furnish information to the probation office in a timely manner. Interrogatories in aid of execution of the fines were sent by the government to Boyd in December 1988, but were not answered until March 1990. Boyd was unable to explain this delay at the hearing. Boyd also failed to respond to a final notice of balance due.
 
 
 22
 For these reasons, the district court's judgment is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 3572(a) provided at the time of Boyd's sentencing:
 (a) Factors to be considered in imposing fine.--The court, in determining whether to impose a fine, and, if a fine is to be imposed, in determining the amount of the fine, the time for payment, and the method of payment shall consider--
 (1) the factors set forth in section 3553(a), to the extent they are applicable, including, with regard to the characteristics of the defendant under section 3553(a), the ability of the defendant to pay the fine in view of the defendant's income, earning capacity, and financial resources ...;
 (2) the nature of the burden that payment of the fine will impose on the defendant, and on any person who is financially dependent upon the defendant, relative to the burden which alternative punishments would impose;
 (3) any restitution or reparation made by the defendant to the victim of the offense, and any obligation imposed upon the defendant to make such restitution or reparation to the victim of the offense;
 * * *
 (5) any other pertinent equitable consideration.
 18 U.S.C. Sec. 3580(a) provided at the time of Boyd's sentencing:
 (a) The court in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.